## HABERLE v. RECONSTRUCTION FINANCE CORP.

## MAGINNIS v. RECONSTRUCTION FINANCE CORP.

## MURRAY v. RECONSTRUCTION FINANCE CORP.

## DOMINION MANGANESE CORP. v. RECONSTRUCTION FINANCE CORP.

### Civ. Nos. 2318-50, 2317-50, 3146-50, 3487.

United States District Court
District of Columbia.

Jan. 12, 1951.

Shinn, Grimes, Harlan, Strong & Carson and Earl W. Shinn, Washington, D. C., for plaintiffs.

J. Allan Sherier, Washington, D. C., for Reconstruction Finance Corp.

McLAUGHLIN, District Judge.

These cases came before the Court on motions to dismiss which have been filed by the Government. The grounds for the motions are referred to under the respective captions in which they appear. The cases in which the motions arise are actions brought by the plaintiffs to recover from the defendant under Section 113 of the Contract Settlement Act of 1944, 41 U.S. C.A. 101 et seq.; 58 Stat. 649.

"Sec. 103. Definitions * * * (d) The terms "termination", "terminate", and "terminated" refer to the termination or cancellation, in whole or in part, of work under a prime contract for the convenience or at the option of the Government (except for default of the prime contractor) * * *."

Sec. 106 "(a) It is the policy of the Government, and it shall be the responsibility of the contracting agencies and the Administrator of General Services, to provide war contractors with speedy

and fair compensation for the termination of any war contract; in accordance with and subject to the provisions of this chapter, giving priority to contractors whose facilities are privately owned or privately operated. Such fair compensation for the termination of subcontracts shall be based on the same principles as compensation for the termination of prime contracts.

"(b) Each contracting agency shall establish methods and standards, suitable to the conditions of various war contractors for determining fair compensation for the termination of war contracts on the basis of actual, standard, average, or estimated costs, or of a percentage of the contract price based on the estimated percentage of completion of work under the terminated contract, or on any other equitable basis, as it deems appropriate. To the extent that such methods and standards require accounting, they shall be adapted, so far as practicable, to the accounting systems used by war contractors, if consistent with recognized commercial accounting practice."

Sec. 113 "(b) Whenever any war contractor is aggrieved by the findings of a contracting agency on his claim or part thereof or by its failure to make such findings in accordance with subsection (a) of this section, he may, at his election—

"(1) appeal to the Appeal Board in accordance with subsection (d) of this section; or

"(2) bring suit against the United States for such claim or such part thereof, in the Court of Claims or in a United States district court, in accordance with section 1346 of Title 28, except that, if the contracting agency is the Reconstruction Finance Corporation, or any corporation organized pursuant to sections 601–617 of Title 15, or any corporation owned or controlled by the United States, the suit shall be brought against such corporation in any court of competent jurisdiction in accordance with existing law."

The plaintiff in each instance had contracted with the Metals Reserve Company, precedessor of the Reconstruction Finance Corporation, for the sale of manganese ore from the sellers' properties. In each instance the seller had ceased to furnish the material contracted for, and in each instance the seller sought to recover under its contract on the basis of a claim asserted under Section 113(b) (2) providing for the bringing of such action in the United States District Court. The defenses raised by the Government are referred to under the captions of the cases hereinafter specifically set out and specifically applicable to such cases.

### Haberle and Maginnis Cases

In the above two cases the defendant relies upon the ground that the plaintiff was in "default" of its contract, and that the provisions of the Contract Settlement Act entitling plaintiff to relief in case of termination are not available to said plaintiff for the reason that cases of "default" are excepted from the Act by Sec. 103(d) supra.

The contractor failed in the above two instances to make delivery in full under the contract and notice was served upon and acknowledged by the contractor.

 The contractor contends that the exceptions contained in Section 103(d) with respect to "default" apply only in case of gross or willful default, and that the record does not disclose such gross or willful default. The Court is unable to accept the contention of the plaintiff with respect to its interpretation of the Act so far as concerns the meaning and applicability of the word "default". The word is clear and unambiguous as to its meaning and carries no connotation requiring showing of grossness or willfulness. The fact that the plaintiff is seeking to secure an interpretation of the word "default" which carries with it by its own terms an addition by means of an adjective or adjectives which clearly modify the subject matter, namely, the "default" itself, appears to the Court to be a request to read into the law something which does not appear in the law as enacted.

The construction of the word "default", as above expressed by the Court is in line

with the interpretation of the Act in the recent case of Johnson v. Reconstruction Finance Corporaton, D.C., E.D.Tenn, 94 F. Supp. 214. The Act has likewise been interpreted by the Appeal Board Office of Contract Settlement in Glade Mountain Corp. v. R. F. C. (Proc. #345) in which the word "default" is held to be plain and unambiguous, and in which the contention is rejected that the word as used carries with it the meaning of willful or gross default.

■ In the Haberle and Maginnis cases the contractor having been in default the Court holds that the contract is not one which was terminated within the meaning of the word "terminate" as used in paragraph 103(d) of the Contract Settlement Act, and that the petition of the plaintiff has not stated a cause of action which brings the plaintiff within the provisions of the Act.

## Murray v. Reconstruction Finance Corporation

■ In this case one of the contracts was cancelled by the Government agency at the request of the plaintiff's predecessor. The Government contends that the plaintiff is not entitled to recover under the Contract Settlement Act of 1944, upon which his claim is based, for the reason that the Act provides, Section 113 for the bringing of actions in connection with the termination of claims, and that the word "termination" as used in the Act, Sec. 103(d), refers to termination for the convenience or at the option of the Government, and that the termination was not for the convenience or at the option of the Government but was rather at the request of the predecessor of the plaintiff. The Court considers the contention of the defendant to be sound. In the Court's opinion the same reasoning applies to a termination of a contract at the request of the plaintiff as applies to a termination of a contract by reason of default of the plaintiff. In truth the termination at the request of plaintiff constitutes a default since the effect of the cancellation in both instances is the same, namely, that the plaintiff, the supplier of the material under the contract, ceases upon cancellation by the supplier, as in the case of default by the supplier, to furnish material under the contract. The provision in Section 103(d) defining termination as having reference to termination for the convenience or at the option of the Government has the same effect as the provision in that section which excepts default of the contractor from the operation of the termination clause. In these instances the plaintiff has failed to bring his action within the provisions of the Contract Settlement Act as a contract terminated within the meaning of the term terminated as used in the Act.

## Dominion Manganese Corporation v. Reconstruction Finance Corporation

## Murray v. Reconstruction Finance Corporation

■ In the above cases with respect to the execution and purpose of the contracts for the supplying of material, namely, manganese, in the Dominion Manganese Corporation case and in the Murray case involving Contract MR–C 1–P3913, the situation is the same as in the other contracts. In these instances the contracts were not terminated but expired automatically by their own terms.

Subsection (b) of Section 106 provides for the establishment of methods and standards suitable to the various conditions of various war contractors for determinating fair compensation for the termination of war contracts on the basis of actual, standard, average, or estimated costs, or of a percentage of the contract price based on the estimated percentage of completion of work under the terminated contract, or on any other equitable basis, as each contracting agency shall deem appropriate.

Since the contracts involved in these cases were not terminated it seems clear from the provision of the Act which deals with terminated contracts as defined by the word "terminated" above referred to in the Act, the causes of action based upon such contracts do not come within the provision of the Act and cannot be maintained under the Act.

For the foregoing reasons the motions to dismiss are sustained.