## GLADE MOUNTAIN CORP. v. RECONSTRUCTION FINANCE CORP.
### Civ. No. 274–51.

United States District Court
D. New Jersey.
April 18, 1952.

Frederick F. Richardson, New Brunswick, N. J., for plaintiff.

Charles R. L. Hemmersley, Hoboken, N. J., for defendant.

HARTSHORNE, District Judge.

Defendant earlier moved to dismiss the complaint in the above entitled cause on presentation of matters outside the pleadings and for summary judgment, F.R.C.P. 12(b) (6), 56, 28 U.S.C. On this motion plaintiff attempted to rely on a point not pleaded and the Court, of its own motion, but on terms, as justice required, authorized such amendment to the pleadings F.R.C.P. 15(a). The first question is whether plaintiff has complied with such terms, the second is on the motion for summary judgment.

The complaint is filed for recovery under the Contract Settlement Act of 1944, chapter 358, 78th Congress, 2nd Sess., 58 Stat. 649, 41 U.S.C.A. § 101 et seq., and is based on two contracts, both entered into during World War II, for the delivery of manganese, a critical war material, between plaintiff and the Metals Reserve Company, hereafter known as M R C, to which defendant Reconstruction Finance Corporation is the successor. The first contract, hereinafter referred to as Contract 1, was entered into in July, 1943, and is for the delivery of low grade ore, the last delivery date being December 31, 1944. The second contract, hereinafter referred to as Contract 2, was entered into between the same parties in January, 1945, for the delivery of high grade ore.

The Act provides that "it is the policy of the Government * * * to provide war contractors with speedy and fair compensation for the termination of any war contract * * *." Section 106(a). The Act further provides that "the terms 'termination', 'terminate', and 'terminated' refer to the termination or cancelation, in whole or in part, of work under a prime contract for the convenience or at the option of the Government (except for default of the prime contractor) * * *." Sec. 103(d). The typical situation to which these provisions of the Act refer are those where the exigencies of war, or perchance of reconversion, require the Government, for the benefit of the public, to terminate an existing contract, in violation of the terms under which such contract would otherwise continue. While such governmental action is justified from the public standpoint, it is, of course, unjustified, so far as the other party to the contract is concerned. Such a situation would thus give rise normally to troublesome litigation, and to a vast extent, in the light of the tremendous number of war contracts which existed during World War II, were it not for the speedy remedy provided therefor by the Contract Settlement Act.

On the other hand, where the Government, under exactly the same circumstances, terminates the contract for the public welfare, due to the exigencies of war, and in that aspect "at its convenience" or "option", but there has been a "default of the prime contractor", the Act, by its very words, *excepts* this situation from its provisions. Nor, where such default exists, does the Act differentiate between a situation where such default by the contractor is regretted by the Government, and a situation such as plaintiff here claims exists, where the Government welcomes such default, as giving the Government the right to terminate the contract for its own convenience as well as for the benefit of the public. This, indeed, is quite in accord with the ordinary principle that compensation is not payable to one party to the contract by the other, who has completely performed the contract according to its terms.

The final situation is where the contract has expired by its own terms, without being violated by either party. Here it is simply at an end, there having been no termination or cancellation at all. In short, the sole basis for recovery by a contractor under the Contract Settlement Act is where the Government, by its termination or cancellation, has itself violated the contract. The entire tenor of the statute itself is to the same effect, as is the historical purpose of the Act. Senate Committee on Military Affairs Report, Senate Report No. 836,

May 2, 1944, U. S. Code Congressional Service, 78th Cong., 2nd Sess. 1944, p. 1161.[1]

■ Since, in Contract 2, the complaint admits that such contract ended by its own terms without any performance whatever by plaintiff thereunder, this Court held that Contract 2 was not terminated "for the convenience or at the option of the Government", i. e., was not violated by the Government because of public exigency, but simply expired of its own terms. Hence, summary judgment for defendant as to the cause of action on Contract 2 was ordered. As to Contract 1, the Court, in its previous opinion, called attention to the undisputed fact "that the date for the last delivery of ore by plaintiff under the contract passed without such delivery", and that therefore for that reason and because of the letter of the M R C to plaintiff of December 23, 1944, in regard to that contract, Contract 1 either came to an end by its own terms, or was cancelled by the Government, not in violation of the contract, but "pursuant to its terms." Thus Contract 1 also would not appear to have been terminated "for the convenience or at the option of the Government".

■ However, in its previous opinion, filed herein January 8, 1952, the Court called attention to the argument of plaintiff that the delivery expiration date in Contract 1 had been waived by the M R C, defendant's predecessor, but that this argument was unsupported by the complaint. Hence, the Court suggested "that it would seem unjust to foreclose it (plaintiff) from formally alleging and substantiating such fact issue". Accordingly, an order was entered January 28, 1952, not only entering judgment in favor of defendant on Contract 2, but providing as to Contract 1, that plaintiff should have the opportunity to amend its pleadings, but only if it should first show by "competent testimony and proof" that such belated amendment had substantial merit. The present proceeding thus is not merely an application by defendant for summary judgment, under which is applicable the

rule laid down in Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580, Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 1949, 176 F.2d 90, but is first an application by plaintiff to obtain "leave of Court" to amend its pleading, as justice may require, by presenting competent proof of the merits of such amendment.

The parties have accordingly submitted proof in the above regard. In substance, plaintiff's proof comes down to the claim that one Neale, a "negotiator" for the M R C, and neither an officer nor a member of its Board of Directors, purported to represent to plaintiff that the M R C letter to plaintiff of December 23, 1944, signed by its Executive Vice President, and admittedly received by plaintiff in due course, did not mean what it said. This letter said, in part, "Pursuant to its terms the captioned contract is hereby cancelled as to the undelivered portion thereof as of December 31, 1944". Further, the affidavit of one Adkerson, who represented plaintiff in the negotiations on these contracts, purports to quote Neale "the man in charge (of) * * * the M R C negotiators", to the effect "that Contract No. 1 was being cancelled merely as a routine thing to clear the books for the year 1944 and would in no way prejudice the rights of the operator (plaintiff)". That there is the gravest question as to the correctness of this statement of Adkerson, is evidenced by a letter from him dated December 28, 1944, right after plaintiff received the above letter from the M R C. In this letter, Adkerson writes plaintiff that the above letter from the M R C "closes the old contract". He adds " * * * the termination of your old contract (Contract 1) as of December 31, 1944 in no way prejudices the new contract (Contract 2) * * *." This clearly indicates his affidavit to be due to mistaken recollection, and that all concerned understood Contract 1 was at an end.

However, assuming, as we must on this motion, that Adkerson's affidavit, executed

1. See also Johnson v. R. F. C., D.C.Tenn. 1950, 94 F.Supp. 214; Haberle v. R. F. C., D.C.D.C.1951, 104 F.Supp. 636; Scotia Mining Co. v. R. F. C. (1948) 3 App. Board O.C.S. No. 195, p. 52.

some seven years after the facts in question, is correct, and that his letter, written at the time of such transaction, is incorrect, we still have the question of whether Neale had either actual or apparent authority to waive the terms of Contract No. 1, as to the delivery of the last installment thereunder, such waiver itself being directly contradictory of the above written notice from the M R C to plaintiff. That Neale had no such actual authority for any such waiver is clear. It is proven, without contradiction, that the actual authority to make or extend contracts lay only in the Board of Directors of M R C, or its authorized officer, and Neale was no such officer or director.

As to whether defendant is bound by such action of Neale because of his apparent authority, defendant claims that this is a suit against a Government corporation and that the doctrine of apparent authority of agents is inapplicable to the Government. True it is that in Federal Crop Insurance Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, cited with approval in the recent case of Reconstruction Finance Corp. v. Martin Dennis Co., 3 Cir., 1952, 195 F.2d 698, the court repeats the aphorism that "men must turn square corners when they deal with the Government," 332 U.S. at page 385, 68 S.Ct. at page 3, 92 L.Ed. 10, and that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." However, the Court immediately adds: "The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. * * * Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." Hence, the Court there held that the individual who had legal, though not actual, notice of the federal Statute and Regulations, could not claim that a Federal agent had apparent authority to do an act, which such individual already knew legally, that such agent had no right to do.

It may thus be too broad to say that the doctrine of apparent authority of an agent is inapplicable to the government, contrary to its applicability to the rest of mankind. The principle may well be that the public must take notice of public statutes and public regulations. Then, having such notice, no member of the public can legally believe that an agent, who violates such limitations on his authority, has any authority so to do. But, on the other hand, in the absence of such statutes and regulations the ordinary doctrine of apparent authority of an agent may be applicable. Here no such statutes or regulatory limitations on the authority of Neale have been shown.

However, even if we assume plaintiff to be correct, and that the ordinary rule of apparent authority applies, no substantial evidence has been offered this Court to indicate that Neale had any apparent authority to bind the M R C to the extension of the terms of its written contract. He was not an officer or a member of its Board of Directors, but a mere negotiator authorized to suggest contractual arrangements for enactment by the authorized officials of the M R C. In fact, plaintiff's counsel frankly admitted at the argument that the various changes in the contracts in question, actually effectuated during their course, were all effectuated, not by Neale, but by the authorized officials of the M R C. Nor was this proven to be contrary to the regular M R C procedure in like cases.

Thus, even if Neale made these statements attributed to him, directly contrary to the letters written years ago, plaintiff has not established by "competent testimony and proof" even prima facie, as required of it by the order of this Court, that the M R C held Neale out to plaintiff as having the authority to bind the M R C on a contract. Accordingly, plaintiff has not met the condition fixed by the Court, in justice, to permit it to amend its complaint.

Such being the condition upon which this Court, in its above opinion and order, reserved its "decision on the granting of

defendant's motion for summary judgment" on Contract 1, we turn to such motion for summary judgment on the cause of action involving Contract 1. From the undisputed facts, it now appears that the Government never violated the terms of Contract 1, but that plaintiff itself violated such contract, in that it failed to deliver, on the delivery date fixed, the last installment of the agreed ore, for the price of which it now seeks compensation. Thus, either this contract expired by its terms, after non-performance by plaintiff, or defendant M R C, by its above letter, cancelled such contract, not in violation of its terms, but expressly "pursuant to its terms". Under either aspect, therefore, Contract 1 was not terminated solely "for the convenience or at the option of the Government", under which condition, alone, the Contract Settlement Act authorizes compensation to plaintiff.

Thus, on the undisputed facts, plaintiff is not entitled to recover compensation from defendant on Contract 1, under its complaint filed herein. Judgment may accordingly be entered in favor of defendant on order to be submitted by counsel.