**GLADE MOUNTAIN CORP. v. RECONSTRUCTION FINANCE CORP.**

No. 10832.

United States Court of Appeals Third Circuit.

Argued Nov. 7, 1952.

Decided Dec. 19, 1952.

9. Permian Oil Co. v. Smith, 129 Tex. 413, 107 S.W.2d 564, 111 A.L.R. 1152; Poth v. Roosth, 146 Tex. 7, 202 S.W.2d 442, 443.

Frederick F. Richardson, New Brunswick, N. J., for appellant.

Charles R. L. Hemmersley, Hoboken, N. J. (Harold E. Jacobsen, New York City, A. Glaser, New York City, on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the application of the Contract Settlement Act of 1944.[1] The plaintiff, Glade Mountain Corporation, hereafter called Glade, appeals from the granting of defendant's motion for summary judgment and claims that a substantial issue of fact was presented.

Glade sued the Reconstruction Finance Corporation after having exhausted its administrative remedy as required by Monolith Portland Midwest Co. v. R.F.C., 9 Cir., 1949, 178 F.2d 854. The contract sued on was made with Metals Reserve Company (MRC) predecessor of RFC. The contract was dated July 26, 1943 and was twice amended thereafter. By its terms Glade agreed to furnish MRC with 5,000 tons of 35% manganese ore by December 31, 1944. Special provisions of the contract included (a) a force majeure clause allowing suspension of deliveries by either party in case of delays caused by events beyond their control, (b) a default clause permitting MRC to cancel the uncompleted portions of the contract without liability for damages in case Glade failed to deliver the total amount by December 31, 1944, and (c) a non-waiver clause under which failure of either party to insist on strict performance was not to be construed as a waiver of strict performance of future deliveries.

1. 41 U.S.C.A. § 101 et seq. (1951 Supp.).

In August of 1944 the War Production Board recommended the purchase, after December 31, 1944, of 42% manganese ore only. Following this recommendation MRC sent out a circular dated September 1, 1944, to the effect that future contracts for the purchase of manganese were to be limited to ore running 42% or better. By its terms the circular did not apply to existing contracts. In December of that year Glade made a further contract with MRC for 42% ore. That contract is not involved in this appeal.

Glade had not delivered 1,500 tons of the 5,000 tons called for by the contract on December 31, 1944, the date for final delivery. On December 23, 1944, MRC sent Glade a letter in which it was said "pursuant to its terms, the [1943] contract is hereby cancelled as to the undelivered portion thereof as of December 31, 1944." Sometime later Glade offered to deliver the remaining tonnage called for by the 1943 contract. It will be assumed for the purpose of discussion here that the requirements for a technical tender were complied with. MRC rejected this proffered delivery. The present suit purports to be under the statute above cited for the unrecovered cost of producing the rejected portion.

Section 3(d) of the Contract Settlement Act defines "termination" as:

"* * * termination or cancelation, in whole or in part, of work under a prime contract for the convenience or at the option of the Government (except for default of the prime contractor) or of work under a subcontract for any reason except the default of the subcontractor."

■ Every court which has considered this provision has held that where the government cancels a contract for default of the other party the latter has no rights under the Contract Settlement Act.[2] As the district judge in this case put it:

"the sole basis for recovery by a contractor under the Contract Settlement Act is where the Government, by its termination or cancellation, has itself violated the contract. The entire tenor of the statute itself is to the same effect, as is the historical purpose of the Act." [3]

■ That this plaintiff did not bring itself within this interpretation of the Act is pretty clear. The last date for delivery was December 31 at which time the plaintiff was in default for delivery on nearly a third of the total amount of material contracted for. It is urged, on the plaintiff's part, that during the period of active procurement for this ore the defense authorities were anxious to have it and did not insist upon delivery according to terms specified in the contract. This may well be so and the two modifications of the contract made with the plaintiff tend to show it. But we have already called attention to the provision in the contract to the effect that a waiver of strict performance of one delivery would not constitute a waiver for the future. On the facts so far considered we see nothing for the plaintiff's case either under this statute or as a matter of common law application of well settled rules of contracts.

In an amendment to its petition the plaintiff added something more. It now complains that it was "compelled" by the district judge to amend. But this is quite a mistaken view, as revealed by a reading of the record. The plaintiff was not compelled to amend but was given an opportunity to do so because the district judge was very careful to give it every opportunity possible to establish a case if it had one.

■ In its amendment and accompanying affidavit the plaintiff sets up through a statement by a man named Adkerson what it regards as matter raising a point upon which a trial on the facts should have been granted. This affidavit states that the affiant negotiated the contract here in question for Glade and was in charge of negoti-

2. Aluminum, Inc. v. R.F.C., 10 Cir., 1945, 151 F.2d 652; Haberle v. R.F.C., D.C. D.C.1951, 104 F.Supp. 636; Johnson v. R.F.C., D.C.E.D.Tenn.1950, 94 F.Supp. 214.

3. The reference is to Glade Mountain Corp. v. R.F.C., D.C.N.J.1952, 104 F. Supp. 695, 696. The opinion is a complete and considered discussion of all the points raised on this appeal plus some not relevant here.

ations for it with MRC. He says he was told "by the MRC negotiators, particularly Homer C. Neale, the man in charge, that Contract No. 1 [the one here in question] was being cancelled merely as a routine thing to clear the books for the year 1944 and would in no way prejudice the rights of the operator." [4]

This affidavit does not materially advance plaintiff's cause. In the first place even if the maker's recollection of a conversation several years before was perfect, what he says he was told does not amount to any waiver by the Government or a cancellation of the contract at the Government's whim. The words to the effect that the notice sent "in no way affect the operator" may be taken literally and still they do not show a waiver of a substantial default which was imminent and in fact subsequently occurred. The second comment upon the affidavit is this. There is an affidavit filed by RFC in the case which shows where the authority to make contracts on behalf of MRC and RFC is lodged. That authority lies with the officers and directors. Mr. Neale, according to the affidavits of both sides, was a negotiator only. There is nothing to indicate that he had either actual or incidental authority to modify the terms of existing contracts or that he was ever held out by anyone working for the government or any of its agencies as having such authority. We are not in this case concerned with the government's liability for the exercise of "incidental authority" or authority by estoppel as was discussed in Southern Pacific Co. v. United States, 3 Cir., 1951, 192 F. 2d 438 for neither is present here. The defendant filed an affidavit, the allegations of which are not denied, by Morris Levinson, formerly counsel to the RFC. He states, purportedly from his own knowledge, the duties of this Mr. Neale. According to the affidavit Mr. Neale was: "never a member of the Board of Directors of Metals Reserve Company, nor a member of the Executive Committee of such Board, and was never an officer of Metals Reserve Company; that he possessed neither genuine nor apparent authority to bind the Company in any respect, and that he was never authorized to commit or bind it in any way, including specifically the effecting of extensions, amendments or modifications to contracts or the waiver of any terms or conditions thereof."

We see no possibility for holding the defendant to any waiver of the provisions of the contract, even giving the wider interpretation to what Mr. Neale is purported to have said. In other words no issue of fact was presented by the plaintiff which made summary judgment improper. The plaintiff made a contract. It was unable to perform the contract. The contract was cancelled, the promisor being in substantial default, at the time set in the agreement for its termination. That is all we can see in the case.

The judgment of the district court will be affirmed.

---

4. The affidavit goes on to say: "There was never any mention of cancellation because of default or non-delivery or any other reason except to clear the books as routine. I understood that it was the policy of the government not to take advantage of the cancellation clause in the contract because of failure of delivery where the government understood the cause and a proper cause existed, and in the Glade case, they thoroughly understood the cause and specifically agreed that they had no intention of taking advantage of the clause for cancellation but were doing it merely as routine, to clear the books and it would in no way affect the operator."