**BELVIDERE DISTILLING CO.**
v.
**RECONSTRUCTION FINANCE CORP.**
No. 10975.

United States Court of Appeals Seventh Circuit.
March 29, 1954.
Rehearing Denied April 28, 1954.

See, also, D.C., 109 F.Supp. 298.

894

Lawrence A. Jacobson, Louis Hershman, Chicago, Ill., for appellant.

Sigmund A. Fink, George D. Kaplan, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

In the District Court plaintiff sought to reform an agreement between the respective parties dated May 1, 1946, for the reason, as it averred, that a mutual mistake of fact had occurred in the preparation of the agreement. The court referred the cause to a master who, after hearing plaintiff's evidence, concluded that plaintiff had shown no right to relief, and recommended that the suit be dismissed. The court approved his findings and dismissed the action for want of equity. The sole question presented is whether the court erred in so doing.

The essential undisputed facts are that plaintiff, a distilling company, who, in its production of grain alcohol, constantly had left a waste by-product, on September 29, 1944, entered into an agreement with defendant's predecessor, Defense Plant Corporation, an agency of the government, whereby plaintiff was to erect a building on its land and the agency was to supply and install machinery and equipment whereby the waste product could be made into feed for livestock, thus supplementing the war-time shortage of grain. An amendatory agreement was entered into November 19, 1945, which provided that Belvidere erect and pay for the building at its own cost and that the government agency install and pay for machinery at a cost of not in excess of $269,610. Defendant agreed to lease to plaintiff the equipment which it was to install. In both the original contract and the amendment it was provided that the contract might be terminated by either party by giving fifteen days written notice of such cancellation. Still later, on May 1, 1946, the parties further amended their agreement, making two changes therein, 1, the maximum amount of defendant's proposed expenditure for machinery was reduced to $230,000, plaintiff agreeing to assume all cost in excess of that amount; 2, the rental which plaintiff was to pay for the use of the machinery was reduced. The provision for termination remained unmodified.

Plaintiff began its building in October, 1946. After part but not all of the machinery had been installed and before the building had been completed, in pursuance of the cancellation clause, defendant on February 3, 1947, gave plaintiff fifteen days written notice of termination of the agreement.

In addition to these undisputed facts, plaintiff, in support of its complaint, offered evidence tending to show that before the last amendment, on May 1, 1946, the president and secretary of plaintiff corporation on April 4, 1946 had agreed orally with Dr. Wyckoff, of

the Department of Agriculture, and Pope, counsel for defendant, that the cost of the machinery to be supplied by defendant would be reduced to $230,000, in consideration of defendant agreeing not to terminate the contract before the project had been completed. Thus, on April 5, plaintiff wrote a letter to the Department of Agriculture, a copy of which was sent to defendant, in which the concluding clause was that the agreement "is conditioned upon there being no cancellation of the project by R.F.C. before completion of the project." Pope, as well as Wyckoff, acknowledged receipt of the letter.

It is plaintiff's contention that when the amendment of May 1, 1946, was drafted, the retention therein of the right to cancel the contract was a mutual mistake of the parties. However, despite plaintiff's claim of an oral agreement to that effect, the contract when submitted continued the provision for cancellation, and when plaintiff received the formal contract executed by defendant, it made no protest because of inclusion of the provision but likewise signed and executed the instrument without objection. In addition, when the cancellation notice was given, plaintiff acknowledged its receipt without protest. That notice, dated February 3, 1947, provided that if plaintiff desired to continue the use of all or part of the facilities furnished by the government, R.F.C. would grant permission for temporary use thereof on a month to month basis. Instead of protesting the cancellation, plaintiff, on February 14, in its letter acknowledging receipt of the notice said: "We hereby request permission for the temporary use" of certain machinery. On March 7, defendant wrote plaintiff that its application to use the machinery mentioned had been granted upon the condition that this consent should not affect the termination of the agreement or affect the date of such termination. The record discloses no further communications between the parties before this suit was instituted.

Viewing the evidence in the light most favorable to plaintiff as we have done, irrespective of whether this is the proper rule in determining the propriety of an order dismissing the complaint, the essential fact is that, though plaintiff and Wyckoff may have orally agreed that the cancellation provision be omitted from the amended contract of May 1, 1946, when the new written formal contract was executed by the parties, no such provision appeared therein. Plaintiff insists that this proof entitles it to reformation. Defendant takes the position that all oral contracts were merged in the written contract and that no mutual mistake of fact occurred.

In Albrecht v. New Amsterdam Casualty Co., 7 Cir., 163 F.2d 16, 19, we said: "When a contract, complete in itself, fails to incorporate a previous oral agreement, then it must be presumed that the parties have purposely rejected the earlier oral agreement." Whether a written contract is complete must be determined by the instrument itself. Parol evidence to show that it is incomplete is not competent. Silence as to a parol contract which might have been embodied but is not, does not open the door to reformation of the instrument to include such parol agreement. Maryland Casualty Co. v. United States for Use of Green, 8 Cir., 169 F.2d 102 at page 110. See also Holly Stores v. Judie, 7 Cir., 179 F.2d 730, 736. Any other holding would clearly violate the traditional parol evidence rule. Brawley v. United States, 96 U.S. 168, 173, 24 L.Ed. 622.

No fraud is charged, but it is said that there was a mutual mistake of fact. Yet the formal contract submitted by defendant to plaintiff was plain and explicit in its terms and defendant wrote, at the time of submission, that, if plaintiff found it satisfactory, it should execute the same. Plaintiff without protesting, executed it. This does not amount to a mutual mistake in the preparation of the document. Thus, in Russell v. Shell Petro-

leum Corp., 10 Cir., 66 F.2d 864, at page 867, the court said: "To justify reformation on the ground of mistake, the mistake must have been made in the drawing of the instrument and not in the making of the contract which it evidences (citing cases). A mistake as to the existing situation, which leads either one or both of the parties to enter into a contract which they would not have entered into had they been apprised of the actual facts, will not justify reformation. It is not what the parties would have intended if they had known better, but what did they intend at the time, informed as they were." The rule is the same in Illinois. See Harley v. Magnolia Petroleum Co., 378 Ill. 19, 37 N. E.2d 760, 137 A.L.R. 900. Plaintiff's actions in failing to protest the form of the contract, in failing to object to the cancellation and in agreeing to use certain of the property on a temporary basis without protest, corroborate the reasoning. To go back now and take cognizance of an oral agreement made prior to the execution of the formal agreement, in such cases as this, is to do away with the parol evidence rule.

■ We agree also with defendant's postulate that no estoppel was created against it. Plaintiff asserts that defendant should not be permitted to plead lack of authority in Wyckoff to bind the defendant. The master believed that, in the absence of proof of mutual mistake of fact, the question of such authority was immaterial. However, if we admit *arguendo* that an oral contract existed between plaintiff and certain officers, including the general counsel of R.F.C. the question still remains as to whether those officers had authority to bind the government. Plaintiff insists that, under the circumstances of the case, defendant is estopped to deny such authority. Upon this subject matter, Judge, later Mr. Justice, Van Devanter in Connecticut Fire Ins. Co. v. Buchanan, 8 Cir., 141 F. 877, at page 897, 4 L.R.A., N.S., 758, said: "* * * in the ab- sence of fraud or mutual mistake, unambiguous written contracts must be permitted to speak for themselves, and cannot, at the instance of one of the parties, be altered or contradicted by parol testimony; and * * * the theory that such testimony, although not competent to alter or contradict the contract, may yet be received for the purpose of raising an estoppel *in pais*, is a mere evasion of the true rule and wholly untenable." The record fails to dislose that either Wyckoff or the Secretary of Agriculture himself had authority to make contracts or amendments binding defendant. That authority was vested in the officers of the R.F.C. and not in its counsel or officials of other agencies of the government. Glade Mountain Corp. v. R.F.C., 3 Cir., 200 F.2d 815; Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10; Reconstruction Finance Corporation v. Sherwood Distilling Co., 4 Cir., 200 F.2d 672, 677. In the latter case the court held that termination of a lease by R.F.C. in accord with its contract could not be avoided by an alleged estoppel based on the oral representations of an R.F.C. engineer.

The case is not unlike that of R.F.C. v. Sherwood, supra, where the court dealt with a termination provision much like the one in the contract at bar, saying, 200 F.2d at page 675: "This termination clause is absolute and unconditional on its face. We find nothing in the other clauses of the contract which would justify us in adding to the termination a new limitation that the right to terminate (by either party) could be exercised only after the completion of the project." And 200 F.2d at page 676: "It might well be that Sherwood was disappointed when R.F.C. elected to terminate this contract, with the result that Sherwood was never able to get into production. It is easy, though, to envisage situations under which it might have been to Sherwood's interest to terminate this contract. And

we think either R.F.C. or Sherwood had the right of termination, after notice, at any time."

The judgment is

Affirmed.