**James ARTMAN**

v.

**INTERNATIONAL HARVESTER COMPANY.**

**Civ. A. No. 67–356.**

United States District Court,
W. D. Pennsylvania.

Aug. 8, 1972.

Irwin B. Wedner, Wallace & Lipton, Pittsburgh, Pa., for plaintiff.

Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant.

## MEMORANDUM ORDER

SCALERA, District Judge.

In March of 1967, plaintiff filed a complaint alleging the right to recover damages from defendant. In the first count of his complaint, plaintiff alleged that on October 31, 1964, defendant executed in his favor three written "Dealers Sales and Service Agreements" of indefinite duration under which he was

granted the right to act as a franchised dealer selling parts and light and medium duty trucks produced by the defendant. Plaintiff also alleged that in May of 1965, he and defendant "orally entered into an additional contract making plaintiff a 'full line heavy duty truck' dealer," [Complaint ¶ 7] and that pursuant to that contract, plaintiff had ordered and received five heavy duty motor trucks. Rounding out his first count, plaintiff alleged that defendant coerced and intimidated him in a bad faith attempt to force him to accept disadvantageous business terms not normally extant between two parties of equal bargaining strength. When plaintiff refused to accept those business terms, defendant terminated plaintiff's one oral and three written franchise agreements in a manner that violated his rights under the "Automobile Dealers' Day in Court Act," 70 Stat. 1125, 15 U.S.C.A. § 1221 et seq.

In his second count plaintiff repleads most of the factual allegations contained in his first count and then further alleges that defendant's conduct, as reflected by those pleadings, constitutes a breach of contract under Pennsylvania law.

On December 17, 1971, the defendant filed with this court a motion entitled "A Motion for Judgment on the Pleadings." In that motion defendant cited § 1(b) of the Automobile Dealers' Day in Court Act [15 U.S.C.A. § 1221(b)] for the proposition that the Dealers' Act affords relief only under *written* franchise agreements and asked this court to enter judgment in its favor with respect to the alleged oral heavy duty truck dealership agreement.

Defendant also argued that the alleged oral heavy duty truck franchise lay within the scope of the Uniform Commercial Code's Statute of Frauds controlling contracts for sale of goods [Act of April 6, 1953, Pa.L. 3, as amended by § 2 of the Act of October 2, 1959, Pa.L. 1023; 12A P.S. § 2–201], and is therefore not provable in court for any purpose.

Defendant's motion contained other challenges to other elements of plaintiff's case which are not relevant here and which will be treated fully in the disposition of the motion for summary judgment.

Oral argument was held on defendant's motion for judgment on the pleadings. During the argument, by agreement of counsel and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties submitted and the court considered matters outside the pleadings, thus transforming the motion into one for summary judgment.

Specifically, the plaintiff submitted several purchase orders under which defendant allegedly delivered several heavy duty trucks and argued that those purchase orders operated as contract memoranda conferring written status upon the oral heavy duty truck agreement.

In a preliminary assessment, this court tentatively concluded that plaintiff's purchase order documents did not confer written status upon the alleged oral heavy duty truck agreement and therefore that agreement could not serve as the basis of any rights or remedies.

On March 10, 1972, while our decision on the summary judgment motion was still pending, plaintiff moved this court for permission to amend his complaint to allege violations of §§ 1 and 2 of the Sherman Act and to further allege that in January or February of 1965, plaintiff and defendant entered into a heavy duty truck franchise and that "said contract was reduced to writing by defendant, but not signed by plaintiff."

## DECISION

Given the present posture of this case, two relatively narrow questions are presented to this court as a result of plaintiff's motion to amend. Should the plaintiff be permitted to amend his complaint to add a Sherman Act claim more than five years after the original was filed and well after the four-year statute of limitations has run? [Clayton Act § 4B, 69 Stat. 283, 15 U.S.C. § 15b.] In

the face of defendant's summary judgment challenge to the alleged oral heavy duty truck franchise and plaintiff's responsive submission of purchase order documents as plaintiff's sole grounds for resisting summary judgment, should this court allow plaintiff to replead a written heavy duty truck franchise so as to circumvent and thereby defeat the motion for summary·judgment as to that narrow issue?

This court is of the opinion that it should not allow plaintiff to plead his Sherman Act claim now that the applicable four-year statute of limitations has run, for the reason that to allow such an amended pleading would severely prejudice the defendant. The literal thrust of Rule 15(c) of the Federal Rules of Civil Procedure indicates an amended complaint will relate back to the original despite the existence of an exhausted statute of limitations if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." In other words, a party that has been notified of litigation arising out of a particular event or transaction has been accorded all the notice that statute of limitations are designed to afford. If an original pleading gives fair notice of the general fact situation upon which the claim is based, an amendment which merely renders more specific what has already been alleged will relate back to the time of the original pleading, even though the statute of limitations has run in the interim. 3 Moore's ¶ 15.-15 [3]. Nonetheless, we do not find that the broad language of Rule 15(c) is without limitation. The true test underlying the words of 15(c) is one of adequate notice in order that the defendant may have a reasonable opportunity to prepare a defense. To read Rule 15(c) otherwise would frustrate the general purpose of statutes of limitation.

The original complaint in this case put the parties on notice that the circumstance surrounding the termination of the plaintiff-defendant dealership arrangements may have been a bad faith breach of contract under Pennsylvania law. In addition, the original complaint notified defendant that plaintiff had alleged a claim based on the Automobile Dealers' Day in Court Act, and more specifically that defendant had used its superior bargaining strength in a coercive effort to force disadvantageous business terms, not normally existing between parties of equal strength, upon plaintiff. Both the bad faith claim and Dealers' Day in Court Act claims turn on the actions of the parties vis-a-vis themselves. Counsel have been accorded the opportunity to investigate those inter-party actions fully through the various federal discovery mechanisms.

In contrast to those two claims, the Sherman Antitrust action brings into issue a multiplicity of facts which lies beyond the interactions of plaintiff and the district office of defendant. If the plaintiff's allegations are construed in the manner most favorable to his cause, they set forth the claim that defendant removed him from the Murrayville area in order to preserve that area as an exclusive marketing zone for another franchisee. Division of territorial markets by mutual agreement among retailers in tantamount to an agreement among those retailers not to compete and would inevitably violate the Sherman Act. Interstate Circuit, Inc. v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939); United States v. Masonite Corporation, 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461 (1942).

If, however, the market divisions are imposed upon the retailers by the manufacturer, they *may* constitute reasonable restraints which ultimately promote competition in the market and therefore lie outside the Sherman Act prohibitions. White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738; Sandura Co. v. Federal Trade Commission, 339 F.2d 847 (6th Cir. 1964). Under the doctrine of White Motors, supra, a manufacturer is permitted to defend against a Sherman

Act claim by showing that he divided the geographical market among his retailing representatives so as to encourage successful competition with retailers representing other brands. Under White Motors, supra, a defendant must gather and present evidence on the nature of the geographical and product markets and the competitive balances struck within those markets. The statute of limitations, however, has run in this case and that statute is an expression of Congress' intent that no party be required to collect and prepare such defense material unless they are given timely notice before records are lost and witnesses' memories are dimmed. Such notice was not given to the defendant in this case. Suehle v. Markem Machine Co., 38 F.R.D. 69 (D.C., 1965).

We note that plaintiff's failure to make a timely effort to introduce an antitrust claim is made more culpable by the fact that the court pointed out the possible existence of antitrust violations on at least one prior occasion. See pp. 2–3 Transcript of Pretrial Conference [CA 67–356] before Judge Edward Dumbauld, October 27, 1971.

■■■ Turning to the question of whether or not, at this stage of the proceedings, this court should allow plaintiff leave to amend so as to allege that the heavy duty truck franchise was actually reduced to written form, we must again answer in the negative but with a qualification. One of the primary purposes of the summary judgment mechanism is to pierce the bare pleadings in order to examine and assess the factual proofs to see if a trial is necessary. See Committee Note of 1963 to Subdivision (e) of F.R.C.P. Rule 56, 6 Moore's Federal Practice ¶ 56.01 [14]. When plaintiff responded to defendant's motion for summary judgment by offering several purchase orders as contract memoranda which would render the agreement provable under the Statute of Frauds and under the Dealers' Day Act, the pleadings had been pierced and the evidence and the proofs had been marshalled in support of the parties' respective positions. With the case sitting in this posture, plaintiff's proposed amendment so as to allege the bare and unsupported contention that the contract was actually written,[1] would circumvent Rule 56 and would therefore defeat its purpose.

■■■ Nonetheless, Rule 15(a) of the Federal Rules of Civil Procedure insists that leave to amend "shall be freely given when justice so requires" and the cases interpret this rule to allow amendment unless the objecting party can show actual prejudice, and even in that case courts may permit the amendment and grant a continuance ·if such a continuance would enable the objecting party to prepare for and meet the new issue. Scott v. Baltimore & O.R. Co. (C. A.3d 1945), 151 F.2d 61, Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Therefore, this court must allow the plaintiff to amend *if* within a reasonable time he comes forward with substantial and convincing evidence to the effect that the oral heavy duty truck contract was actually reduced to written form. Otherwise, leave to amend on this issue will be denied. This court will reserve its decision on defendant's summary judgment motion pending the outcome in this matter. Glade Mountain Corp. v. R.F.C. (D.N.J.1952), 104 F.Supp. 695.

---

1. An examination of the record fails to show any positive evidence to support plaintiff's belated allegation that International reduced the alleged oral truck franchise to writing. In fact, the plaintiff himself admits that he does not know if the contract was put into writing by defendant. Deposition James C. Artman, Jr., taken July 20 and 21, 1967.