King S. CAREY

v.

Leroy BEANS, Jr., Warden of Lehigh County Prison, John E. Roberts, Lehigh County Solicitor, William H. Platt, D. A. of Lehigh County, County of Lehigh.

Civ. A. No. 80–0253.

United States District Court, E. D. Pennsylvania.

Oct. 20, 1980.

S. T. Shmookler, Richard J. Orloski, Allentown, Pa., for plaintiff.

Frank A. Baker, III, R. F. Stevens, Allentown, Pa., for Beans and Roberts.

W. G. Ross, Allentown, Pa., for Dist. Atty. Platt.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

During the past ten years civil rights petitions filed in federal court by state prisoners seeking redress for alleged violations of constitutional rights have increased by almost 400%.[1] Many of the prisoners request release from incarceration. The instant case, however, involves a rare and somewhat unusual prayer for relief: plaintiff seeks to enjoin the defendants from excluding his entry into a state prison.

In mid–January 1980, plaintiff, an unlicensed bailbondsman who worked at the Lehigh County, Pennsylvania, prison for seven years, instituted this action seeking damages and injunctive relief from county officials responsible for a recent policy change which denied access to the prison to all unlicensed bailbondsmen. The clerk of the court assigned the matter initially to another judge of this court, who conducted several months of pre–trial proceedings. The complaint alleges that defendants–Lehigh County, the warden, county solicitor and district attorney–conspired *inter se* to deny plaintiff his "right" to interview county prisoners during the normal course of business. Plaintiff construes this allegedly arbitrary and capricious action as violative of rights secured by the First, Fifth, Eighth and Fourteenth Amendments. Plaintiff also adds a pendent state claim of tortious interference with contract rights by alleg-

ing that defendants specifically and wrongfully intended to interfere with his employment contract by excluding him from the prison. Plaintiff invokes jurisdiction under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985(3), 28 U.S.C. §§ 1331 and 1343, and directly under those constitutional amendments allegedly violated.

The district attorney subsequently moved to dismiss the complaint on the twin theories that plaintiff's allegations, termed vague and conclusory, were insufficient to state a claim under § 1983 and that, in acting in his official capacity as a prosecutor, he is absolutely immune from suit thereunder. *See generally Mancini v. Lester*, 630 F.2d 990, (3d Cir. 1980). Seven days later, and before the Court had the opportunity to rule on defendant's pending motion, plaintiff moved for a preliminary injunction seeking essentially the same relief sought in the original complaint. The Court and counsel discussed these motions at a March 11, 1980 pre–trial conference and the Court ordered that all discovery, pre–trial proceedings and motions for summary judgment be filed by May 16, 1980, and set trial for June 24, 1980. The Court further warned that failure to comply with the order could result in sanctions or dismissal.

Defendants subsequently filed a timely motion for summary judgment. Opposing this motion, plaintiff submitted an affidavit which defendants, in turn, moved to strike. One week later, and only two days before the court–ordered deadline for the completion of all pre–trial proceedings, plaintiff moved for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a).[2] Opposing the motion, defendant asserted that this latest motion was a bad faith and frivolous attempt by plaintiff to extend the imminent discovery deadline. Five days before the scheduled trial this case was reassigned to our calendar with the following

---

1. I. Sensenich, *Compendium of the Law on Prisoners' Rights* (1979) at 10.

2. Rule 15(a) states in pertinent part that, after a responsive pleading has been served, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires".

unresolved motions pending before the Court: plaintiff's motion for a preliminary injunction, plaintiff's motion to amend, the district attorney's motion to dismiss, all other defendants' motion to strike facts from plaintiff's affidavit and for summary judgment, and a motion by plaintiff's counsel to withdraw.

## MOTION TO AMEND

■ Generally, a motion to amend the complaint will be granted "freely" when the interests of justice so require. Fed.R. Civ.P. 15(a). However, where plaintiff files a motion to amend after defendant has moved for summary judgment the motion to amend will not be granted unless the party seeking amendment can show not only that the proposed amendment has "substantial merit", *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979), but also come forward with "substantial and convincing evidence" supporting the newly asserted claim. *Artam v. International Harvester, Inc.*, 355 F.Supp. 476, 481 (W.D.Pa.1972). *Cf. Glesenkamp v. National Mutual Insurance Co.*, 71 F.R.D. 1, 4 (N.D.Cal.1974) ("[p]laintiff's understandable desire to avoid the effect of defendant's motion for summary judgment is insufficient reason for infusing life into a case ...."). This more demanding burden, which the party seeking amendment bears at this procedural juncture, evolves from the truism that "prejudice to the non–moving party is the touchstone for denial of the amendment". *Cornell & Co., Inc. v. Occupational Safety and Health Administration*, 573 F.2d 820, 823 (3d Cir. 1978).

To make this determination, courts look to the proposed amendment, any supporting evidence, and the degree of prejudice accruing to the defendant if the motion is granted. The proposed amendment in the case at bar consists of three paragraphs which allege that

    (A). [i]n exercise of his First Amendment rights, Plaintiff spoke with members of the Federal Bureau of Investigation conducting an investigation into alleged official corruption in Lehigh County and supplied them with information which may indicate criminal wrongdoing on the part of officials and employees of Lehigh County.

    (B). In exercise of his First Amendment rights, the Plaintiff worked against the election efforts of Defendant, Platt.

    (C). The exclusion of Plaintiff from the Lehigh County prison was the unlawful exercise of political patronage power by the Defendant, Platt, to reward two political supporters who were and are the only two business competitors of the Plaintiff's employer, ABC [Bonding Company], and further, to penalize the Plaintiff herein for his exercise of his constitutional right to free speech, namely, his discussions with the F.B.I., and his political activities against Defendant, Platt.

The warden, district attorney and county defendants characterize this proposed amendment as an "eleventh hour attempt to ... insert ... scandalous matter ... in a desperate attempt to salvage a frivolous claim". Defendants' Brief in Opposition to Plaintiff's Motion to Amend at 3. Defendants further point out that plaintiff has failed to produce any evidence supportive of his claim, that plaintiff has engaged in only minimal and limited discovery, that completed discovery does not support plaintiff's claim and, as such, plaintiff's assertion that he currently seeks to amend because of facts uncovered during the discovery process is a bad faith misrepresentation to the Court.

■ However, defendants do not attack several paragraphs of plaintiff's affidavit. In one paragraph the affidavit states that plaintiff actively opposed the election of defendant district attorney and that aside from plaintiff's employer only one other surety agent provided bail bonds in Lehigh County. Furthermore, plaintiff indicated through this affidavit that he provided the Federal Bureau of Investigation and the district attorney of Lehigh County with

specific information concerning allegations of criminal misconduct by Lehigh County employees. The District Attorney refused to act on this information, whereas the United States Attorney's office investigated the matter and subpoenaed plaintiff to appear before a federal grand jury convened in Philadelphia during April 1980. These allegations sufficiently meet the threshold requirements necessary to amend the complaint under these circumstances. *See* Plaintiff's Affidavit ¶¶ 28–29, 31–35. Accordingly, plaintiff's motion to amend the complaint will be granted.

## MOTION TO STRIKE

■ Defendants attack plaintiff's affidavit, filed in opposition to defendants' motion for summary judgment for failure to conform to the requirements of Fed.R.Civ.P. 56(c), which provides in pertinent part that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Interpreting this rule, courts have held that affidavits must be made upon personal knowledge, *Williams v. Evangelical Retirement Homes*, 594 F.2d 701, 703 (8th Cir. 1979), devoid of hearsay, conclusory language and statements which purport to examine thoughts as well as actions. *Maiorana v. MacDonald*, 596 F.2d 1072, 1080 (1st Cir. 1979). Affidavits speculating as to motivations but containing no factual support do not conform to the rule, *Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 188 (2d Cir.), *cert. denied*, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978), and statements prefaced by the phrases, "I believe" or "upon information and belief" or those made upon an "understanding", *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978), are properly subject to a motion to strike. Moreover, affidavits which contain conclusions of law, ultimate facts, assertions, arguments and inferences derived from the opposing party's affidavits similarly may be "disregarded". *Cohen v. Ayers*, 449 F.Supp. 298, 321 (E.D.Ill.1978), *aff'd mem.*, 596 F.2d 733 (7th Cir. 1979).

■ Tested against this standard, several paragraphs of plaintiff's affidavit must be stricken. Plaintiff begins his affidavit with the general statement that

> I, King S. Carey, being duly sworn according to law, depose and say that the following facts are known to me, and are true and correct to the best of my knowledge, information and belief.

This introductory paragraph is followed by forty–two separate paragraphs setting forth a variety of averments, including in ¶ 22 statements that "I believe, and therefore aver, that many other persons who are not licensed professional bondsmen or licensed surety agents are permitted the opportunity of visiting inmates at the Lehigh County Prison for a wide variety of reasons". *See also* ¶ 20 ("I believe and therefore aver that . . . [un]licensed professional bondsmen . . . are allowed to visit inmates at the Lehigh County Prison"). Similarly, legal inferences and conclusions expressed in plaintiff's affidavit will be stricken. For example, plaintiff concluded that defendants "adopted the *ultra vires* prison ban . . to punish me for the exercise of my right to free speech". Plaintiff's Affidavit, ¶ 32. *See also* ¶¶ 36, 38 and 41 ("[t]he obvious inference from these facts is that the public officials in Lehigh County are attempting to punish me for bringing allegations of misconduct of employees of Lehigh County"). Paragraphs in which plaintiff speculated and opined concerning defendants' motives will also be stricken. For example, plaintiff charged in ¶ 31 that

> [t]he officials in Lehigh County were receptive to the ploys of my employer's business competitors for two reasons: [the only other bailbondsmen in Lehigh County] were political supporters of the elected officials of the County, with specific ties to [the] District Attorney . . and [the] District Attorney wanted to punish me for campaigning against him in the general election . . .

*See also* ¶¶ 25, 26, and 30. Accordingly, defendants' motion will be granted in part and denied in part.

## MOTION FOR SUMMARY JUDGMENT

Turning now to the motion for summary judgment, we note preliminarily that the amendment to the complaint will *not* be subjected to defendant's pending motion, which defendant filed prior to allowance of the amendment. *Mayerson v. Washington Manufacturing Co.*, 58 F.R.D. 377, 381 (E.D. Pa.1972). Our ruling, then, will be limited to the motion as it attacks the original complaint.

A review of the record reveals a number of uncontroverted material facts as to which there is no genuine issue. For seven years plaintiff worked as a bail bondsman in Lehigh County, Pennsylvania. During that time plaintiff did not have insurance or bail bondsman licenses; conducting business without them is a misdemeanor.[3] Defendants, who learned that plaintiff was soliciting bail–bonding business without a license, reviewed applicable licensing statutes and a report of the Pennsylvania Crime Commission of 1976 entitled *Abuses and Criminality in the Bail Bonding Business,* which disclosed, *inter alia,* that "many individuals were found to be misrepresenting their authority, either by improper use of their licenses, by posting bail without a proper license, or by misusing the insurance company's power of attorney". Defendants also learned that plaintiff had indeed become involved in criminal activity while working as an unlicensed bail bondsman. In June of 1977 plaintiff pled guilty to attempting to prostitute a woman whose release from prison on bond he had arranged successfully. The reluctant prostitute was, in reality, an undercover state police officer engaged in investigative work at the prison. This incident was not plaintiff's first involvement in criminal activity. Plaintiff's record dated back to the mid–1950s and included convictions for breaking and entering, larceny, receiving stolen goods, vagrancy and violations of the State

Home Improvement Laws. Further, it is uncontroverted that when defendants initially decided to bar plaintiff from entering the prison because he did not have the requisite licenses, plaintiff's counsel successfully persuaded defendants that plaintiff was engaged in other lawful business and not conducting bail–bonding activities in the prison. When defendants learned that plaintiff was, in fact, soliciting bail bonds, they excluded him under the recently–adopted policy barring unlicensed bail bondsmen.

Our analysis of the summary judgment motion begins with the proposition that

> maintaining institutional security and preserving internal order and discipline are essential goals ... Prison officials *must* be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent ... unauthorized entry ... [as] the *central objective* of prison administration is to preserve institutional security.

*Bell v. Wolfish*, 441 U.S. 520, 546–47, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979) (emphasis added). The relevant inquiry then becomes whether entries may be termed "unauthorized" by prison officials and hence barred. In successive cases decided in June of 1974 the Supreme Court held that "newsmen have no constitutional right of access to prisons or their inmates beyond that afforded to the general public", *Pell v. Procunier*, 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495 (1974), and that "nobody may enter the prison and designate the inmate whom he would like to visit, unless the prospective visitor is a lawyer, clergyman, relative or friend of that inmate". *Saxbe v. Washington Post Co.*, 417 U.S. 843, 849, 94 S.Ct. 2811, 2814, 41 L.Ed.2d 514 (1974). Significantly, both cases were brought by news media plaintiffs who unsuccessfully asserted First Amendment rights in challenging prison visitation and interview regulations. *Accord, Houchins v. KQED*, 438 U.S. 1, 9, 98 S.Ct. 2588, 2594, 57 L.Ed.2d 553 (1978) and *Main Road v. Aytch*, 565 F.2d 54, 57 (3d Cir. 1977).

---

3. *See* 40 P.S. § 231 and 42 Pa.Cons.Stat.Ann. § 5741 (Purdon).

In *Wallace v. Hutto*, 80 F.R.D. 739 (W.D. Va.1978), aff'd, 601 F.2d 583 (4th Cir. 1979), plaintiff alleged that a prison policy which prohibited visitation between incarcerated spouses violated the First, Fifth, Eighth and Fourteenth Amendments. Rebuffing plaintiffs' challenges, the court granted defendants' motions to dismiss and for summary judgment and stated that "petitioners' substantive claim is not one of constitutional proportions". *Id.* at 740. The court also observed that "extraordinary circumstances" are required in order to "justify federal intervention into what is essentially a matter of prison administration". *Id.* at 741. The *Wallace* holding is particularly significant in that plaintiffs had invoked rights secured by the marital relationship, traditionally regarded "as a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred". *Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965).

Contending that his employment is the "functional equivalent ... of a paralegal", Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 15, plaintiff asserts that he cannot constitutionally be barred from the prison. However, a paralegal whom prison officials reasonably view as a disruptive influence on other inmates may be denied access to the prison. *Phillips v. Bureau of Prisons*, 591 F.2d 966 (D.C.Cir.1979). The *Phillips* court stated that the "long standing policy of extending visitation privileges liberally to ... [p]aralegals ... has created a justifiable expectation that the only basis for the government's refusal to grant entrance is concern for internal security, order, and discipline". *Id.* at 971 (footnotes omitted). Noting that the judiciary must defer to the "informed discretion of prison administrators", *id.* at 972, the court rejected plaintiff's claim that the prison could bar him only by demonstrating plaintiff's disruptive proclivities. The court further noted that plaintiff could not prevail on a theory that

his First Amendment associational and free speech rights were violated by defendants' actions. *Id.* at 975 n. 62.

■ The standard which emerges from these cases is that decisions of prison authorities regarding access and security are to be accorded a high degree of deference. Rational policy decisions which restrict entry by the news media, incarcerated spouses and paralegals will not be disturbed unless there is "substantial evidence in the record to indicate that the officials have exaggerated their response to the perceived problem". *Bell v. Wolfish*, 441 U.S. at 540–41 n. 23, 99 S.Ct. at 1874–75 n. 23, quoting *Pell v. Procunier*, 417 U.S. at 827, 94 S.Ct. at 2806.

■ Defendants, county officials who are sworn to uphold the law, *could* rationally and reasonably assume that bailbondsmen who engage in that profession in violation of the law should, indeed perhaps must, be barred from gaining access to the prison for *commercial* purposes. Where the unlicensed bailbondsman has a lengthy criminal record which includes a recent conviction for criminal activity growing out of the bonding business and where a recent state report documents criminal activity in that business, this Court will defer to prison and county officials whose professional expertise will not be second–guessed, absent a finding that their conduct reflects an exaggerated response to a particular problem. Having found that defendants' reaction to on–going illegal activities is both reasonable and rational, we will grant defendants' motion for summary judgment.[4]

The amended complaint, not subjected to the motion for summary judgment, will be dismissed *sua sponte* since it fails to state a claim upon which relief can be granted. *See Bryson v. Brand Insulators, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) ("a court's authority to dismiss such a case is clear"). Plaintiff's amended complaint asserts that partisan political considerations partially motivated defendants when they denied

---

4. We note that in so holding plaintiff is not completely barred from engaging in his chosen profession as his duties are wider ranging than

merely taking bail applications in prison. See Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment, ⁋ 15.

plaintiff access to the prison. Seeking to assert rights recently re–defined in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), plaintiff has placed his reliance on improper authority. *Branti*, like its predecessor, *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), centered on political hirings and firings of governmental workers by local political subdivisions. The instant case, *at best*, concerns a legitimate policy decision by county officials to bar unlicensed bailbondsmen who illegally practice their trade. To the extent that *Branti* may be applicable, however, we note that only those workers who were fired *solely* for political reasons may seek the sanctuary which *Branti* provides. Firings for which there are legitimate, apolitical reasons are permissible even though there may be some political animus involved. In fact, "where the primary impetus for removal lack[s] impermissible motivation a possibly illegitimate motive incident thereto will not vitiate otherwise legal conduct". *Farkas v. Thornburgh*, 493 F.Supp. 1168, 1174 (E.D.Pa.1980).

Accordingly, the amended complaint will be dismissed.