James ARTMAN

v.

INTERNATIONAL HARVESTER
COMPANY.

Civ. A. No. 67–356.

United States District Court,
W. D. Pennsylvania.

Feb. 7, 1973.

Irwin B. Wedner, Wallace & Lipton, Pittsburgh, Pa., for plaintiff.

Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant.

## OPINION

SCALERA, District Judge.

In March of 1967, plaintiff filed a complaint alleging the right to recover damages from defendant. In the first count of his complaint, plaintiff alleged that on October 31, 1964, defendant executed in his favor three written "Dealers Sales and Service Agreements" of indefinite duration under which he was granted the right to act as a franchised dealer selling parts and light and medium duty trucks produced by the defendant. Plaintiff also alleged that in May of 1965, he and defendant "orally entered into an additional contract making plaintiff a 'full line heavy duty truck' dealer," [Complaint ¶ 7] and that pursuant to that contract, plaintiff had ordered and received five heavy duty motor trucks. Rounding out his first count, plaintiff alleged that defendant coerced and intimidated him in a bad faith attempt to force him to accept disadvantageous business terms not normally extant between two parties of equal bargaining strength. When plaintiff refused to accept those business terms, defendant terminated plaintiff's one oral and three written franchise agreements in a manner that violated his rights under the "Automobile Dealers' Day in Court Act," 70 Stat. 1125, 15 U.S.C.A. § 1221 et seq.

In his second count plaintiff repleads most of the factual allegations contained in his first count and then further alleges that defendant's conduct, as reflected by those pleadings, constitutes a breach of contract under Pennsylvania law.

On December 17, 1971, the defendant filed with this court a motion entitled "A Motion for Judgment on the Pleadings." In that motion defendant cited § 1(b) of the Automobile Dealers' Day in Court Act [15 U.S.C.A. § 1221(b)] for the proposition that the Dealers' Act affords relief only under *written* franchise agreements and asked this court to enter judgment in its favor with respect to the alleged oral heavy duty truck dealership agreement.

Defendant also argued that the alleged oral heavy duty truck franchise lay within the scope of the Uniform Commercial Code's Statute of Frauds controlling contracts for sale of goods [Act of April 6, 1953, Pa.L. 3, as amended by § 2 of the Act of October 2, 1959, Pa.L.

1023; 12A P.S. § 2–201], and is therefore not provable in court for any purpose.

Defendant takes the position that all the contracts between defendant and James Artman were contracts calling for successive performance and providing for indefinite duration, and therefore all of those contracts could be properly terminated under Pennsylvania law at the whim of either party.

Finally, defendant's motion asks this court to hold as a matter of law that defendant's relations with and eventual termination of James Artman do not constitute acts of "bad faith coercion," within the meaning of the Automobile Dealers' Day in Court Act.

Oral argument was held on defendant's motion for judgment on the pleadings. During the argument, by agreement of counsel and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties submitted and the court considered matters outside the pleadings, thus transforming the motion into one for summary judgment.

Specifically, the plaintiff submitted several purchase orders under which defendant allegedly delivered several heavy duty trucks and argued that those purchase orders operated as contract memoranda conferring written status upon the oral heavy duty truck agreement.

In a preliminary assessment, this court tentatively concluded that plaintiff's purchase order documents did not confer written status upon the alleged oral heavy duty truck agreement and therefore that agreement could not serve as the basis of any rights or remedies.

On March 10, 1972, while our decision on the summary judgment motion was still pending, plaintiff moved this court for permission to amend his complaint to allege violations of §§ 1 and 2 of the Sherman Act and to further allege that in January or February of 1965, plaintiff and defendant entered into a heavy duty truck franchise and that "said contract was reduced to writing by defendant, but not signed by plaintiff."

On August 8, 1972, 355 F.Supp. 476, this court rendered a memorandum order denying plaintiff's request for leave to allege violations of the Sherman Antitrust Act, and deferring decision on plaintiff's request to amend his complaint so as to allege that the International-Artman heavy duty truck contract was reduced to writing and signed by defendant. In that memorandum we regarded plaintiff's eleventh-hour request for leave to amend as a device that might improperly bypass the summary judgment proceedings that were then before the court. Accordingly, we placed the plaintiff on notice that we would not consider his allegation unless he brought forth evidence to substantiate them. See Glade Mountain Corp. v. R. F. C. (D.N.J.1952), 104 F.Supp. 695. The plaintiff has submitted material in support of his position and we are now prepared to consider the balance of International's motion for summary judgment.

## DECISION

The defendant's motion and plaintiff's response pose a series of questions for the court's consideration: Do Artman's purchase order documents and International's delivery of heavy duty trucks pursuant to some of those documents make the alleged Artman-International oral heavy duty truck franchise a written agreement properly enforceable within the scope of the Automobile Dealers' Day in Court Act? Do those same documents render the alleged oral heavy duty truck franchise provable under the applicable statute of frauds? Does the affidavit filed by plaintiff on August 31, 1972 provide substantial evidence that the Artman-International heavy duty truck franchise was reduced to writing and signed by defendant International? Given the present state of the pleadings and proofs in this case, does International Harvester's termination of James Artman's three written franchise contracts constitute a bad faith breach of contract under Pennsylvania law? Can this court hold as a matter of law that the conduct sur-

rounding International's termination of Artman's written franchise was not bad faith coercion or intimidation within the meaning of § 1(e) of the Automobile Dealers' Day in Court Act [15 U.S.C.A. § 1221(e)]?

. Section 2 of the Automobile Dealers' Day in Court Act [15 U.S.C.A. § 1222] enables an auto dealer to sue an auto manufacturer in order to:

> Recover the damages by him sustained and the cost of suit by reason of the failure of the said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, cancelling, or not renewing the franchise with said dealer. . . .

The word "franchise" is defined in § 1(b) of the Act [15 U.S.C.A. § 1221(b)]:

> The term "franchise" shall mean the *written* agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract. [Emphasis supplied.]

■ Thus, the Act applies only to written dealership contracts and does not cover oral agreements. Southern Rambler Sales, Inc. v. American Motors Corp., 375 F.2d 932 (5th Cir.), cert. denied, 389 U.S. 832, 88 S.Ct. 105, 19 L. Ed.2d 92 (1967); Frank Chevrolet Co. v. General Motors Corp., 304 F.Supp. 307 (N.D.Ohio 1968).

■ The common commercial usage of the word "franchise" implies a relationship during which two or more are bound to each other for some period of time and during which both agree to certain procedural rights and duties relating to the manner in which a retail product will be delivered, sold, and, if necessary, serviced. A franchise agreement preserves to the manufacturer some measure of control over the merchandising and general business practices of the retailer. This measure of control differentiates a franchise agreement from a simple contract of sale which allows the retailer to resell the commodity in a manner of his own choosing. The purchase order documents which plaintiff submitted for our consideration might well serve as memoranda for a series of simple contracts of sale because they set forth terms specifying the quality and quantity of what was being sold as well as the price being paid. Nonetheless, those purchase documents are devoid of any terms which reserve to the manufacturer any measure of control over the retailer's merchandising practices and lacking that type of term, they provide evidence of a simple sale of goods rather than evidence of a franchise relationship.[1] In short, these purchase documents do not bring the alleged oral heavy duty truck franchise within the scope of the Automobile Dealers' Day in Court Act.

---

1. "To satisfy the statute of frauds, a memorandum of a contract must show all the essential terms and conditions of the contract with reasonable certainty, and where the memorandum does not state all of the terms of the contract, or omits or states incompletely a single essential element, or merely refers to the contract without stating its terms, or shows expressly or inferentially that there are terms which it either does not state or does not clearly and sufficiently state, the memorandum is insufficient to comply with the statute. Thus, if a particular time of performance or the date or place of delivery has been agreed upon, it must be stated in the memorandum with substantial accuracy." 16 P.L.E., Statute of Frauds § 54. [Case citations omitted]

. . . [I]t is generally held that a memorandum will not be sufficient unless it contains within itself all the terms of the contract as it was made, including the means of identifying the parties and their relation to the transaction. In other words, as a general rule, oral evidence may be used only for the purpose of making definite what is ambiguously stated, or to interpret or to translate the words or symbols used in setting forth the agreement of the parties, but not to add to the memorandum." Grismore on Contracts (Murray Revision 1965) § 273 at p. 461. [Case citations omitted]

■ ■ The same reasoning applies to make the oral truck franchise unprovable under the Statute of Frauds. Pennsylvania courts have repeatedly held that dealership or distribution franchises fall within the sales section of the Uniform Commercial Code. Weilersbacher v. Pittsburgh Brewing Co., 421 Pa. 118, 218 A.2d 806 (1966); Mastrian v. William Friehofer Baking Co., 45 Pa.Dist. & Co.R.2d 237, 58 Luz. 221 (C.P. Luzerne County 1968). Those decisions bring the Artman oral heavy duty truck franchise within the scope of § 2–201 of the Code [Act of April 6, 1953, Pa.L. 3, as amended by § 2 of the Act of October 2, 1959, Pa.L. 1023; 12A P.S. § 2–201] which provides that:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable.

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2–606).

■ An examination of the complaint and a review of the present proofs in this case brings this court to conclude that the alleged oral agreement is unenforceable under § 2–201(1). The complaint and the other proofs submitted before August 31, 1972 make no reference to any "writing sufficient to indicate a contract . . . has been made . . . and signed by the party against whom enforcement is sought," and the purchase order documents submitted by plaintiff are devoid of any terms which could serve as evidence of a franchise relationship. The plaintiff does aver in paragraph 9 of his complaint that the parties commenced to perform under that oral contract, but such part performance can operate only to validate a *past contract of sale*. According to subsection (3)(c), "past performance" has a limited effect and affords the buyer a remedy only "with respect to goods for which payment has been made and accepted." That section does not indicate in any way that a delivery of goods shall be construed as binding two parties to a complex on-going franchise relationship. Logic compels us not to make such an interpretation.

This brings us to the question of whether or not the plaintiff's affidavit

of August 31, 1972 presents evidence supportive of its contention that the heavy duty truck contract was reduced to writing and signed by defendant International. If that affidavit does set forth such supportive evidence in keeping with the requirements of our memorandum and order of August 8, 1972, we must allow the plaintiff to amend his complaint so as to allege that the heavy duty truck franchise was reduced to writing and signed by the defendant.

Plaintiff's affidavit makes a number of allegations to the effect that:

(1) On May 10, 1965 "it was agreed that International and Artman enter into a full-time motor truck contract in addition to his light line franchise.

(2) "Thereafter, the defendant's zone manager, Edward Ronald Menke, attempted to deliver such a contract to Mr. Artman but was unable to do so."

The affidavit sets out other allegations and other excerpts from memoranda which arguably indicate that the parties may have intended to sign such a contract. Nonetheless, on the facts of this case as stated by the plaintiff himself, we find that the heavy duty truck franchise was not reduced to writing within the meaning of either the statute of frauds or the Automobile Dealers' Day in Court Act.[2]

2. The relevant evidence on the "written" contract issue is as follows:

Plaintiff's first amended complaint in relevant part states that:

2. Paragraph 7 of plaintiff's original complaint is amended to read: On or about late January or early February, 1965, plaintiff and defendant entered into an additional contract making plaintiff a full line heavy duty truck dealer of defendant. Said contract was reduced to writing by defendant, but not signed by plaintiff. Further, plaintiff purchased a number of heavy duty motor trucks from defendant, and the documents involving said purchases are sufficient to constitute a written contract so as to satisfy the requirement of a written contract as found in the Automobile Dealers' Day in Court Act (15 U.S.C. § 1222).

Plaintiff's affidavit in support of his amended complaint states in relevant part that:

At said meeting of May 10, 1965 in the office of J. W. Young, district manager for International Harvester, "it was agreed that International and Artman enter into a full-line motor truck contract in addition to his light-line franchise". Thereafter, the defendant's zone manager, Edward Ronald Menke, attempted to deliver such a contract to Mr. Artman but was unable to do so.

Deposition of James Artman, plaintiff, taken July 20, 1967 in relevant part states that:

Q. (to Artman) When you met with Mr. Young and Mr. Menke, did you enter into a written contract at that time?

A. Not at that meeting. Everything was discussed. Everything was determined. pp. 25–26.

\* \* \* \* \*

Q. I think we got sidetracked a minute ago. You were beginning to tell us why the contract for the heavy-duty equipment was never signed.

A. This all starts falling into the rumor racket. There is existing proof in Murrysville right now. There was a fellow named "Sam Auretto"—

(The last question and answer were read back by the reporter.)

MR. WALLACE: Do you know the answer, Mr. Sweeney?

MR. SWEENEY: I think the witness testified that the contract was not signed.

MR. WALLACE: By him, or by them?

THE WITNESS: Whether they signed their portion of it, I will never know. I never seen the contract. I never got my hands on the paper. pp. 31–32.

\* \* \* \* \*

Q. They had already notified you that they were not going to enter into a written contract over the large trucks.

A. They didn't never really tell me that they wasn't going to give me a written contract. They told me they decided to hold back a little bit.

Q. You suspected there would be one forthcoming, did you not?

A. As far as I was concerned, I had it.

Q. You had a written contract.

A. I had a written contract with respect that all preparations and all formality and everything to get it was made even down to the factory's notification because the factory will not build a truck or release one to a dealer unless he is a full-line dealer.

Section 2–201(1) of the Statute of Frauds Section of the Uniform Commercial Code indicates that:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Under this portion of the Code, plaintiff's evidence tending to show that defendant signed such a contract would throw the issue into proper dispute and this court would be obligated to grant leave to amend, and summary judgment would be inappropriate. However, this section need not control in every respect if the parties in their offer and/or acceptance have clearly manifested a different intention. Throughout his pleadings, plaintiff has referred to the defendant's use of standard form contracts and, in fact, has attached three identical form contracts to his complaint. The depositions of all parties indicate that these were in use at the time this suit arose. At page 16 of all of those agreements, we find a paragraph entitled "APPROVAL OF AGREEMENT." That paragraph indicates that:

> The agreement shall become effective as of the date it is stated in the heading of the agreement to be effective when it is fully executed by the parties, approved in writing thereon by the Company's District Manager or Assistant District Manager, and when a copy so executed and approved is delivered to the Dealer.

By the language of this section, International creates a series of conditions that must be satisfied before the contract begins to operate as a written instrument, which conditions are: (1) a signing by all the parties; (2) approval by proper company authorities; and (3) a delivery of a copy to the dealer. Vol. 1 Anderson, Uniform Commercial Code 2d Ed. at § 2–201:22(d) states that:

> If the writing indicates that such contract as there may be is subject to a condition precedent but does not indicate whether such condition has been satisfied, the writing is not sufficient. Thus a writing which indicates that any transaction between the parties does not constitute a contract until the contingencies have been satisfied, whether in terms of acts of a party thereto or of third persons, the writing is not sufficient [to satisfy the statute of frauds].

Q. You never had a written contract.
A. No.

An International Harvester zone office memo in relevant part states that:

June 25, 1965

TO: J. W. Young
FROM: E. R. Menke
SUBJECT: Artman's Garage—Murrysville, Pennsylvania

A meeting was held on Monday, May 10, 1965, in the office of Mr. J. W. Young. In attendance were Messrs. J. W. Young, F. C. Andrews, and Jim Artman of Artman's Garage, and the writer. The purpose of the meeting was to give consideration to Mr. Artman's request that he be signed to a full-line motor truck contract in addition to his current light-line franchise.

During the course of the conversation Mr. Young asked the dealer how much of his time would be consumed by his attention to his trucking business, which was his prime source of income. Mr. Artman assured Mr. Young that the time required was quite negligible and he would be devoting almost his entire time to operating his dealership. It was agreed by all parties that we enter into a contract with the dealer contingent upon the dealer installing the Ill. Bookkeeping System. When the meeting was concluded I informed Jim Artman that I would visit him later in the week to get the Bookkeeping System ordered and to get the necessary information in order to complete contracts.

See John H. Wickersham Engineering & Constr. Co. v. Arbutus Steel Co. (Pa.) 58 Lanc.Law Rev. 164.

Plaintiff has not alleged that he signed such a contract or that a copy of a properly executed contract was delivered to him. Therefore, his allegations, even if true, are not sufficient to render the alleged document proper within the Statute of Frauds. By analogy we conclude that such a document could not be written within the meaning of the Automobile Dealers' Day in Court Act. The plaintiff's request for leave to amend on this issue must therefore be denied.

International's termination of Artman's three written contracts was initiated pursuant to a standard term in all of those agreements which provided that:

Unless the agreement is terminated under Section 25 hereof, it shall remain in effect until it is terminated by one or both of the parties as provided in this section.

(a) The Dealer may at any time, with or without cause, terminate the agreement by giving notice of termination to the Company's District Manager or Assistant District Manager. Such notice of termination shall specify the date upon which the termination is to become effective and not less than thirty days shall intervene between the giving of such notice and such effective date.

(b) The agreement may be terminated at any time by mutual written consent, the effective date of termination to be as mutually agreed upon. The consent in behalf of the Company shall be executed by its District Manager or Assistant District Manager.

(c) The Company, with or without cause, may terminate the agreement at any time by giving to the Dealer notice of termination signed by the District Manager, or Assistant District Manager. Such notice of termination shall specify the date upon which the termination is to become effective and not less than thirty days

shall intervene between the giving of such notice and such effective date.

Notice of termination shall be in writing. When issued by the Company, notice may either be given to the Dealer personally or forwarded to him by mail. When issued by the Dealer, notice shall be mailed to the Company's District Manager or Assistant District Manager.

Upon the effective date of termination, all indebtedness of the Dealer to the Company or to International Harvester Credit Corporation shall become immediately due and payable and, unless otherwise agreed between the parties, all unfilled orders accepted from the Dealer shall be deemed cancelled without liability on the part of either party. Upon the issuance of a notice of termination by either party, or upon mutual agreement to terminate, the Company, at its option, may establish terms of cash with order or C.O.D. on any or all goods thereafter delivered to the Dealer.

Plaintiff maintains that defendant's use of the foregoing provision to terminate his contract without cause constitutes legal injury in the form of a bad faith breach of contract under Pennsylvania law. This position is not in harmony with the current posture of Pennsylvania statutes and decisions. Section 2–309(2) [12A P.S. § 2–309(2)] of the Uniform Commercial Code provides:

Where the contract provides for successive performance but is indefinite in duration, it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party. [12A P.S. § 2–309(2)].

In Weilersbacher v. Pittsburgh Brewing Co., 421 Pa. 118, 218 A.2d 806 (1966), the Pennsylvania Supreme Court read § 2–309(2) literally in arriving at its holding that a beer distribution agreement which lacked any provisions relating to duration or methods of termination could be rightfully terminated at will or even arbitrarily by either par-

ty. The facts in the present case place the defendant in an even stronger position because the Artman franchise agreements included a term which expressly granted either party the power to terminate the agreement at will after sufficient notice.

The plaintiff, however, goes on to argue that he was forced to accept the above-quoted termination clause because of International's superior bargaining strength. Citing Code § 2–302 [12A P. S. § 2–302], which provides that:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Plaintiff asks the court to delete the termination clause and to enforce the balance of the written agreements. We do not need to reach the merits of plaintiff's position to dispose of it. If we granted plaintiff's request and deleted the termination clause, the remade contract would be a performance contract of indefinite duration and such contracts are clearly within the meaning of U.C.C. § 2–309(2) [12A P.S. § 2–309(2)], which is cited and set forth above.

■ In subsection (2), the Pennsylvania legislature had created a policy which favors easy termination of such contracts unless the parties have agreed otherwise. The termination clause which plaintiff complains of merely restates subsection (2), and its absence would not alter the law. This court should not use its broad powers under § 2–302 of the Code to emasculate § 2–309 which was drafted specifically to control contracts of indefinite duration which call for successive performance.

A method of terminating a contract which has been specifically sanctioned by an enactment of the Pennsylvania Legislature is simply not an unconscionable practice within the meaning of § 2–302.

■ Finally, it is the opinion of this court that the question of whether or not International's actions vis-a-vis James Artman constitute bad faith coercion within the meaning of the Automobile Dealers' Day in Court Act, is a question involving the intentions of International as shown by its actions. As such, that question should be presented to a jury. We therefore cannot render a summary judgment of this particular issue.

An appropriate order will be entered

### ORDER

And now, this 7th day of February, 1973;

It is hereby ordered that summary judgment be and is granted in favor of the defendant in keeping with the above opinion.

This order leaves only one issue for trial—plaintiff's right to recover under the Automobile Dealers' Day in Court Act for the defendant's termination of his three written contracts.