**VIRGIN ISLANDS DISTRIBUTOR, INC., Plaintiff**

v.

**DURKEE FOODS and SCM CORPORATION, Defendants**

Civil No. 1980/76

District Court of the Virgin Islands

Div. of St. Croix

March 31, 1982

MARK L. MILLIGAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

GEORGE S. ELTMAN, ESQ., Christiansted, St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The defendants in this case have moved for summary judgment, claiming that the four-year oral agreement under which the plaintiff seeks relief is unenforceable under the Virgin Islands Statute of

Frauds. Because the Court finds that the oral agreement is for four years and therefore in violation of the one year provision of the Statute of Frauds, the motion will be granted and the amended complaint will be dismissed.

## FACTS

Plaintiff, in its amended complaint for breach of contract (hereafter "Plaintiff's Amended Complaint") and subsequent documents, alleged the existence of a four-year oral agreement whereby plaintiff was to be a local distributor for the defendants' spice products in the Virgin Islands. The plaintiff also alleged that it was agreed that plaintiff would order the spices from defendants and defendants would deliver them to the plainiff for sale and distribution in the Virgin Islands. With each delivery, defendants allegedly were to provide plaintiff with a "true and correct company cost and price listing for each item ordered which would then sufficiently inform plaintiff so as to enable it to market such goods at a reasonable profit." Plaintiff's Amended Complaint at 2. Plaintiff ordered and received three trailers of spices. As a result of defendants' alleged failure to provide price lists with those deliveries, plaintiff claims that it sold the products at a price below its cost price and that it subsequently lost profits and was forced to sell its inventory to prevent further losses.

## I. NATURE OF THE AGREEMENT

### A.

Fed. R. Civ. P. 56(c) provides that a motion for summary judgment will be granted if the affidavits, pleadings, depositions, and other discovery documents show that there is no genuine issue as to any material fact and that the moving party is entitled to such judgment as a matter of law. The defendants submitted an excerpt from a deposition of Abdel Suid (hereafter "Mr. Suid"), the "sole principal" of plaintiff, in which he stated the agreement with defendants was for four years. The plaintiff has also stated that the agreement was for four years. Plaintiff's Opposition to Defendants' Motion for Summary Judgment (hereafter "Plaintiff's Opposition Memorandum") at 1. It is undisputed, therefore, that a four-year agreement existed between the parties. Plaintiff did not present an affidavit raising any other factual issues.

Although plaintiff, in its Amended Complaint, refers to the oral agreement as a sales contract, Mr. Suid has previously described his relationship with defendants as a distributorship in a

number of instances.[1] In light of plaintiff's consistent characterization of its relationship with defendants as a distributor, this Court finds that the contract at issue is in fact a distributorship agreement.[2]

## B.

The defendants argued, in oral argument and in memoranda submitted to this Court, that the Statute of Frauds provision contained in 28 V.I.C. § 244(1) applies. Section 244(1) provides that any oral agreement which cannot be performed within one year is void.[3] Plaintiff, however, claims, that the agreement is governed by the Statute of Frauds provision under the Uniform Commercial Code

---

[1] In Plaintiff's Opposition Memorandum, at 1, plaintiff states that "[i]n April 1978 the parties agreed for four (4) years Plaintiff would serve as the exclusive distributor of the Durkee Foods product . . . ." In Plaintiff's Answers to Defendants' Request for Admission and Interrogatories, Interrogatory No. 7, Mr. Suid stated that the franchise was offered to him. Mr. Suid also implied that he was the distributor for the Virgin Islands of Durkee Food products in Interrogatory No. 8.

[2] The term "distributor" may be defined as any legal relationship that stands between the manufacturer and the retail seller in purchase, consignments or contracts for sale of consumer goods. Black's Law Dictionary 427 (rev. 5th ed. 1979). The term "franchise" is defined as:

"Franchise" means a contract or agreement, either expressed or implied, whether oral or written between two or more persons, excluding credit or financing arrangements, relationships between manufacturers, agreements of a bona fide and express interim or trial nature requiring a relatively small new investment by the franchise (as hereinafter described), and warranty, cooperative advertising, training, and other programs provided by one person to another person which other person receives his franchise from a third party—
(a) wherein a commercial relationship of definite duration or continuing indefinite duration is involved;
(b) wherein one person, hereinafter called the "franchisee", is granted the right to offer, sell, and distribute goods or services to the extent that they are manufactured, processed, distributed, or (in the case of services) organized and directed by the other person, hereinafter called the "franchisor";
(c) wherein the franchisee as an independent business constitutes a component of franchisor's distribution system;
(d) wherein the operation of franchisee's business franchise is substantially associated with a franchisor's trademark, service mark, trade name, advertising or other commercial symbol designating the franchisor; and
(e) wherein the operation of franchisee's business is substantially reliant on franchisor for the continued supply of goods or services. 12A V.I.C. § 130(2) (Supp. 1980).

[3] Section 244(1) provides:

In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof is in writing, and subscribed by the party to be charged therewith, or by his lawful agent under written authority:
(1) An agreement that by its terms is not to be performed within one year from the making thereof. 28 V.I.C. § 244(1) (1976).

(hereafter "U.C.C."), 11A V.I.C. § 2—201(1), which does not contain a one-year requirement.

Section 2—201 applies to a "contract for the sale of goods for the price of $500 or more."[4] The first question is whether a distributorship is a "contract for the sale of goods."[5] The Court has failed to find in Virgin Islands law where a distributorship has been classified as any type of contract. There are cases where state law determined whether distributorships were covered or not covered under the U.C.C. Vigano v. Wylain, Inc., 633 F.2d 522, 525 n.3 (8th Cir. 1980) (the Eighth Circuit reluctantly found that under Missouri law, distributorship agreements were not covered by Article 2 of the U.C.C.); Artman v. International Harvester Co., 355 F.Supp. 482 (W.D. Pa. 1973) (dealership or distributorship franchise found to fall under U.C.C.).

■■ A number of courts have resorted to a balancing test. The Seventh Circuit, in Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Wat., 532 F.2d 572 (7th Cir. 1976), in determining whether a contract was one of sales or services, accepted the test established by the Eighth Circuit in Bonebrake v. Cox, 499 F.2d 951 (8th Cir. 1974): "whether their predominant factor, their thrust, their purpose, reasonably stated, was the rendition of service with goods incidentally involved, or a sale and purchase of 'movable' 'things', with labor or services incidentally involved." 532 F.2d at 580 n.6. See also North American Leisure Corp. v. A & B Duplicators, Ltd., 468 F.2d 695, 697 (2d Cir. 1972) (test was the "essence" of the agreement). The Third Circuit has used a similar test although it was applied to determine whether an agreement to purchase the

---

[4] Section 2—201(1) of the U.C.C. provides that:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing. 11A V.I.C. § 2—201(1) (1965).

> Since the plaintiff is asking for damages greater than $500.00 and the contract was made for a four-year period, it is assumed, for argument purposes, that the price of the contract for the sale of goods is greater than $500.00.

[5] This is important because § 2—201(1) does not apply to rendering services for a price, or to contracts of employment. J. White & R. Summers, Uniform Commercial Code § 2—2 (1972). See also, Wells v. 10-X Mfg. Co., 609 F.2d 248 (6th Cir. 1979); Stone v. Krylon, 141 F.Supp. 785 (E.D. Pa. 1956).

assets of a car dealership was for "goods" within the meaning of the U.C.C. The Court noted:

> For the Statute of Frauds relating to the sale of goods to become applicable, we do not believe every asset subject to the sale must qualify under the "movable" test of U.C.C. § 2—105. See n.7 supra. Rather than a view of mechanical technicality or of mathematical nicety, a view of the reasonable totality of the circumstances should control the characterization of the contract for sale. If, viewed as a whole, it can be concluded that the essential bulk of the assets to be transferred qualify as "goods," then it is appropriate to consider the transaction a "contract for the sale of goods".

De Filippo v. Ford Motor Co., 516 F.2d 1313, 1323 (3rd Cir.), cert. denied, 423 U.S. 912 (1975).

■ In looking at the oral agreement as a whole, paying particular attention to the description provided in Plaintiff's Amended Complaint, we find that the agreement is more like a sale and purchase of movable things with labor or services incidentally involved, than a service contract with goods incidentally involved. The major transaction is the buying and selling of spices and the service of providing price lists appears incidental to the transaction of the goods. The distributorship agreement, is, therefore, a "contract for the sale of goods" and the U.C.C. is applicable.

## C.

■■ Although the U.C.C. is applicable to the distributorship agreement, this does not imply that 28 V.I.C. § 244(1) is not applicable. The general rule is that where two statutes are in irreconcilable conflict, the later act controls. If the acts cannot be harmonized, the later act operates as a repeal of the first only to the extent of the irreconcilable inconsistency. Ocasio v. Bryan, 261 F.Supp. 409, 411 (D.V.I. 1966) citing to 50 Am.Jur. Statutes § 543. Cf. 1 V.I.C. § 50 (1967 & Supp. 1980) (effect on rights by the repeal of statutes). While § 244(1) was enacted prior to the U.C.C.,[6] § 244(1) is not inconsistent with the U.C.C. The rule of the later statute effectively repealing the older statute "prevails where under no reasonable hypothesis can the provisions of both be construed as co-existing." Ocasio, 261 F.Supp. at 411.

■■ It seems reasonable to construe the U.C.C. as providing for additional requirements for particular types of agreements, specifi-

---

[6] The U.C.C. was enacted in 1965, and § 244 of Title 28 was based on the 1921 Codes.

cally sales contracts. Hence, § 244(1) is applicable in this case, and the oral contract establishing plaintiff's distributorship is unenforceable. See, also, Marcraft Recreation Corp. v. Francis Devlin Co., 506 F.Supp. 1081 (S.D.N.Y. 1981) (breach of oral agreement of an exclusive dealership for greater than one year is not enforceable under N.Y. law); Cooper v. Vitraco, Inc., 320 F.Supp. 239 (D.V.I. 1970) (unwritten lifetime employment contract unenforceable); Caribe Lumber & Trading Corp. v. Terwilleger, 268 F.Supp. 532 (D.V.I. 1967) (oral agreement to assume a debt unenforceable).

## II. PARTIAL PERFORMANCE

Plaintiff has also argued that there was at least partial performance and that the contract should be enforced against the defendants at least for the portion performed. Restatement (Second) of Contracts § 130; 11A V.I.C. § 2—201(3)(c).

■■ The restatements of law approved by the American Law Institute are only pertinent if there are no existing applicable Virgin Islands statutes. 1 V.I.C. § 4 (1967). See Co-Build Companies v. Virgin Islands Refinery, 570 F.2d 492, 494 (3rd Cir. 1978); Skeoch v. Ottley, 377 F.2d 804, 810 (3rd Cir. 1967). Because Title 11A of the V.I. Code is applicable, the Restatement (Second) of Contracts does not, therefore, come into play.

■■■ The Doctrine of Part Performance can be invoked, however, to prevent an inequity to a party when that party has relied on (by inducement or acquiescence) an oral agreement which normally would be voided by the Statute of Frauds. Henderson v. Resevic, 262 F.Supp. 36 (D.V.I. 1966). In Henderson, the Court noted:

> The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense.

262 F.Supp. at 38, quoting 49 Am.Jur. Statute of Frauds § 442. Plaintiff has failed to show that upon reliance on defendants' representation it has altered its position and incurred "unjust and unconscientious injury and loss." All plaintiff has done is alleged a defense which is not supported by documentation of specific facts.

See Fed. R. Civ. P. 56(e); Securities Exchange Commission v. Bonastia, 614 F.2d 908, 914 (3rd Cir. 1980).

Section 2—201(3)(c) of the U.C.C. provides that "[a] contract which does not satisfy the requirements of [§ 2—201(1)] but which is valid in other respects is enforceable . . . (c) with respect to goods for which payment has been made and accepted or which have been received and accepted (§ 2—606)." 11A V.I.C. § 2—201(3)(c) (1965). Plaintiff has submitted unsworn copies of invoices apparently to indicate "goods for which payment has been made and accepted or which have been received and accepted" to show partial performance of the distributorship agreement. Assuming, arguendo, that these documents do represent the invoices of the three trailer deliveries of merchandise to the plaintiff from the defendant Durkee Foods, they show only one term of the distributorship agreement as alleged by the plaintiff: the delivery of the spices to the plaintiff. One term of the agreement, however, cannot logically be used to prove the other terms of the agreement or the whole agreement itself. In Artman, supra, a case where the plaintiff submitted purchase orders to prove that a franchise agreement existed under § 2—201(3)(c), the Court stated:

> According to subsection (3)(c), "past performance" has a limited effect and affords the buyer a remedy only "with respect to goods for which payment has been made and accepted." That section does not indicate in any way that a delivery of goods shall be construed as binding two parties to a complex on-going franchise relationship. Logic compels us not to make such an interpretation.

355 F.Supp. at 486.

The invoices on their face show nothing to indicate the existence of a distributorship agreement nor the responsibility by defendants to provide a price and cost listing with each delivery. The invoices are, therefore, insufficient to show the existence of the distributorship agreement as described by plaintiff. More specifically, they are insufficient to show that the defendants were to provide the cost and price listing with each delivery. Section 2—201(3)(c), therefore, does not provide plaintiff with the legal mechanism to enforce the distributorship agreement with respect to the three transactions.

## CONCLUSION

The Court finds that although the oral distributorship agreement in question is subject to the Uniform Commercial Code, it also falls

within the one year provision of the Statute of Frauds. The contract, therefore, is unenforceable and plaintiff's amended complaint is dismissed.

## ORDER

THIS MATTER is before the Court on a motion for summary judgment by the defendants. The Court having filed its memorandum opinion, it is hereby

ORDERED:

THAT the motion is GRANTED and plaintiff's amended complaint is therefore DISMISSED.