**Thomas M. CUFFY, Plaintiff,**

v.

**GETTY REFINING & MARKETING COMPANY and Texaco Refining & Marketing Company, Defendants.**

**Civ. A. No. 84–761 MMS.**

United States District Court,
D. Delaware.

Nov. 12, 1986.

---

Theopalis K. Gregory of Crosse & Gregory, Wilmington, Del., for plaintiff.

David A. Jenkins of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., of counsel: Larry V. Utke, Houston, Tex., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiff Thomas M. Cuffy sued his employer, Getty Refining & Marketing Co.[1] ("Getty"), alleging employment discrimination on the basis of his color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Two motions are presented for decision: first, plaintiff's motion to amend his pleadings under Rule 15(a); second, defendant's motion for partial summary judgment on the § 1981 claims.[2] For reasons discussed below, plaintiff's motion to amend will be granted and defendant's motion for summary judgment will be granted in part and denied in part.

## FACTS

Getty employs the plaintiff, a black male, as a General Service Operator ("GSO") at its refinery in Delaware City, Delaware. GSO's typically report to GSO Supervisors, who are appointed from among the GSO's based on GSO Supervisor and senior management recommendations.

On October 2, 1980, a white employee was appointed to a vacant GSO Supervisor position. After the announcement of the promotion, plaintiff asked GSO Supervisor Joseph Rizzo why he (Cuffy) was not appointed. Rizzo responded that Cuffy was not appointed because he was black.[3] Plaintiff protested this statement, filing a union grievance a few weeks later. In January, 1981, Rizzo and Raymond Arzinger, manager of the Getty refinery, sent letters of apology to plaintiff concerning the October 2 statement of Rizzo.

Plaintiff filed a discrimination charge with the Equal Opportunity Commission ("EEOC") on February 23, 1981, asserting that he was denied a promotion to GSO Supervisor on the basis of his race. The parties entered into a Settlement Agreement in June, 1981, which provided, *inter alia*, "... a) that Mr. Cuffy will be considered for the next vacancy for the position of GSO Supervisor and, if he is judged to be the best qualified candidate, will be appointed to that position." Docket Item ("Dkt.") 41A, at 95.[4]

In the fall of 1981, another GSO supervisor position opened. After reviewing the

---

1. Getty is now a subsidiary of Texaco Refining and Marketing Co., and plaintiff is an employee of the Getty subsidiary. Although suit has been brought against both Getty and Texaco, this opinion will treat them as a single defendant.

2. Defendant's motion does not challenge the claims under Title VII, 42 U.S.C. § 2000e.

3. Q. And did Mr. Cuffy ask you why he was not selected for the position?
   A. Yes.
   Q. And did you respond to that question?
   A. If I can discuss it—?
   Q. Certainly, you can.
   A. Okay. We finished the safety meeting. He was standing by the door and we were all done there and I made the announcement. And we are friends, I thought, me and Cuffy. We had a good repertoire [sic] between us. And he said to me, "Hey, Joe, how about me?" I says "No, you're black." And Walt Lacinski, he says "How about me, Joe?" I says, "No, Walt, you're a Polack." We used to talk this way to one another. And Sam Coco, I says "You're a dago like me. You can't get it

either." And that was the end of that. And everybody laughed. Then we walked out in the other room.
   Rizzo Deposition, Dkt. 45A, at 26–27.

4. The other pertinent parts of the Settlement Agreement are set out below:
   b) that Respondent, aware of the responsibility of management to maintain a working atmosphere free of racial, ethnic and religious affronts and insults, and cognizant that failure to take steps calculated to maintain such an atmosphere violates Title VII of the Civil Rights Act of 1964, as amended, will institute educational measures in the near future, in the form of meetings and seminars of management and supervisory personnel, designed to assure that such practices on the part of company supervisors will not occur; that steps will be taken to have this message filter down to all levels and to all employees;
   c) that if Mr. Cuffy is rejected for promotion to a higher or more desirable grade or title, he shall have the right to consult with an official of the Personnel Department so that he may

candidates, Mr. Robert Melson, the refinery's Mechanical Superintendent, appointed Al Miller, a white GSO, to the position. Plaintiff learned of this decision on December 20, 1981, and filed a Charge of Discrimination with the EEOC on June 18, 1982. Plaintiff claimed that he was denied the promotion because he is black, and in retaliation for the previous EEOC complaint. After conciliation efforts failed, the EEOC sent a Right to Sue Letter to plaintiff on October 25, 1984.

Prior to the conclusion of the EEOC investigation, Getty reprimanded and suspended plaintiff for three days for neglecting his duties while on fire watch duty at the refinery on May 4, 1984. Plaintiff objected to the disciplinary action through the union grievance procedures, but the arbitrator upheld Getty's action. In the Matter of Arbitration Between Cuffy v. Texaco, Case No. 14–300–1395–84R (Feb. 13, 1985). Plaintiff seeks to add this incident to his complaint as evidence of Getty's continuing discrimination and retaliation against him.

Plaintiff filed suit on December 28, 1984. Discovery was to be concluded by December 1, 1985. Defendant moved for summary judgment on the § 1981 claims on December 31, 1985; plaintiff filed a motion to amend his complaint on January 23, 1986, six days after all such motions were to be filed.

## DISCUSSION

The Court will begin by examining plaintiff's motion to amend, and then consider defendant's motion for partial summary judgment.

### A. Motion to Amend

Plaintiff seeks to amend the complaint to clarify his legal theory and provide specific facts concerning racial discrimination and retaliation.[5] He asserts that the May, 1984, suspension was racially motivated and has now been added to the complaint because the discriminatory intent did not become clear until after further discussions with his counsel. Moreover, plaintiff asserts the alleged violation of the Settlement Agreement constitutes a "continuing violation."

The Court is not called on to consider whether these amendments are sufficient to make out a Title VII or § 1981 claim. Rather, the concern is whether the plaintiff should be permitted to amend his complaint to bring these incidents and theory into the litigation. Rule 15(a) states that a party may amend the pleading with the court's permission, and "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court gave a liberal interpretation of the rule in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), noting that absent undue delay, bad faith, or prejudice to the opposing par-

---

be informed of the specific reason or reasons for the rejection, and the reason or reasons which justify *the appointment of the successful candidate;*

Dkt. 41A, at 95.

**5.** All of the amendments are in Paragraph 12 of the complaint, printed below with the additions highlighted:

12. Since the filing of the initial employment discrimination complaint, which concluded with a negotiated settlement, Plaintiff has suffered harassment, retaliation and discrimination by the Defendant, and its agents, servants, and employees. Among the numerous forms of harassment[,] retaliation and harassment [sic] is the placing of unsigned negative notes in Plaintiff's personnel file regarding unsatisfactory performance, *as well as memo negatively imparting* [sic] *on Mr. Cuffy's employment status,* absent any statement that formal discipline had been taken,

and without notifying Plaintiff that said notes had been taken, and without notifying Plaintiff that *said notes had been placed in his personnel file.*

*Additionally, Defendant wrongfully reprimanded Mr. Cuffy for allegedly failing to adhere to ambiguous rules and regulations regarding fire watch duties on or about May 4, 1984.*

*Further, Defendant has, and continues to, totally disregard material terms of an Equal Employment Opportunity Commission Settlement Agreement dated, June, 1981 that was entered into between the Plaintiff and the Defendant, an agreement under which the Defendant knew, the Plaintiff could not be promoted under the Defendant's promotional process.*

Dkt. 38, at 4.

ty, the court should allow amendment. *Id.* at 182, 83 S.Ct. at 230. The Third Circuit Court of Appeals, in *Cornell & Co. v. OSHRC,* 573 F.2d 820 (3d Cir.1978), stated, "It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." *Id.* at 823; *see Heyl & Patterson Intern. v. F.D. Rich Housing,* 663 F.2d 419, 425 (3d Cir.1981); *Carey v. Beans,* 500 F.Supp. 580, 582 (E.D. Pa.1980). The general presumption in favor of allowing amendment, *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 938 (3d Cir.1984), can be overcome only by the opposing party showing that the amendment will be prejudicial.

Defendant argues that granting the motion will be prejudicial, coming after discovery has been completed with a new discriminatory act and a new legal theory. Furthermore, defendant asserts plaintiff offered the amendments only after the defendant's motion for partial summary judgment had been filed, in an eleventh hour attempt to avoid what defendant regards as the inevitable outcome of its motion.

■ Prejudice does not mean inconvenience to a party. Moreover, it is obvious that an amendment, designed to strengthen the movant's legal position, will in some way harm the opponent. In the context of a 15(a) amendment, prejudice means that the nonmoving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Heyl & Patterson Intern.,* 663 F.2d at 426. *Cf. Cornell & Co.,* 573 F.2d at 825 (court denied the government's motion to amend as delay was the cause of the defendant's inability to secure the testimony of vital witnesses).

■ The timing of the motion is not dispositive. Although a plaintiff should plead specific instances of discrimination and applicable theories at the outset in a civil rights complaint, the failure to do so does

not bar amendment, even 13 months after the complaint was filed. *See Heyl & Patterson Intern.,* 663 F.2d at 426.

■ The necessity for defendant to conduct further discovery on the May 4 suspension of plaintiff is not sufficient to show prejudice. *See Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 569 (3d Cir.1976) (necessity of further discovery not sufficient prejudice to bar amendment alleging claim arising from same transaction). Similarly, the fact that the motion to amend was made after the motion for partial summary judgment does not require denying the plaintiff's motion. *See Artman v. International Harvester Co.,* 355 F.Supp. 476, 481 (W.D.Pa.1972) (granting plaintiff's motion to amend after hearing on defendant's summary judgment motion); *Boileau,* 730 F.2d at 936–37 (allowing amendment after summary judgment motion filed to conform to Supreme Court decision); 6 *Moore's Federal Practice* 2d, ¶ 56.10 (complaint should not be summarily dismissed after summary judgment motion if amendment would state good cause of action).

Defendant cites two cases, *Local 472, etc. v. Georgia Power Co.,* 684 F.2d 721 (11th Cir.1982), and *Roberts v. Arizona Bd. of Regents,* 661 F.2d 796 (9th Cir.1981), that uphold denials of motions to amend after summary judgment motions were filed. Both opinions are premised on the abuse of discretion standard of review for a district judge's decision to deny the motion. They do not analyze the merits of whether the non-moving parties would be prejudiced by the amendments. The cases provide no teaching on the issue of whether defendant will be prejudiced.

■ Defendant has failed to show the requisite prejudice if the Court should grant the amendment. Further, granting the motion comports with the strong policy underlying Rule 15(a), by allowing plaintiff to fully and fairly litigate his claims of discrimination.[6] *See Boileau,* 730 F.2d at

---

**6.** Defendant also argues that the motion to amend should be denied because plaintiff exhibited bad faith by failing to raise the racial dis-

crimination issue during arbitration of the May 4 suspension. While plaintiff did not raise the issue in a labor arbitration context, that omis-

939. Plaintiff will be granted permission to amend his complaint.

## B. Motion for Partial Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure permits the Court to render summary judgment if it is "show[n] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The allegations, evidence produced by the parties, and any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). The moving party has the initial burden of demonstrating the absence of any material factual dispute, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and that "burden may be discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 257 (3d Cir.1983), *rev'd in part on other grounds sub nom. Matsushita Elect. Indust. Co. v. Zenith Radio Corp.*, — U.S. —, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court, as a threshold matter, determines if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, — U.S. —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see Graham v. F.B. Leopold Co.*, 779 F.2d 170, 173 (3d Cir.1985).

Defendant moves for partial summary judgment, asserting that the Delaware statute of limitations bars the plaintiff's § 1981 claims. Defendant relies upon the Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and the Third Circuit Court of Appeals extension of *Wilson*'s holding to § 1981 in *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985). The analysis will begin by examining the applicable Delaware statute of limitations, and then determine if plaintiff can avoid the effect of the statute through a continuing violation theory.[7]

### 1. Statute of Limitations

Under *Garcia*, a state's personal injury statute of limitations applies to § 1983 claims. *Goodman* held that the personal injury limitations period is also the proper limitations statute to employ in § 1981 causes of action. 777 F.2d at 120. In the context of this case, the statute of limitations applicable to § 1981 claims is the Delaware two-year statute of limitations, specifically, 10 *Del.C.* § 8119. Plaintiff's § 1981 claim must have been filed within two years of his sustaining injury due to defendant's employment discrimination, or the suit will be barred.[8]

---

sion does not necessarily mean the claim was consciously ignored then or is a fabrication. Plaintiff's decision to raise the issue now does not evidence any bad faith, especially in light of his counsel's statement that the discovery process brought forth the discriminatory aspects of the act.

7. The Court treats defendant's motion as directed against the amended complaint.

8. There is a question as to the retroactive application of *Goodman.* Although the Third Circuit Court of Appeals stated that the holding would be applied retroactively, 777 F.2d at 120, it subsequently chose not to do so in *Al-Khazraji v. St. Francis College*, 784 F.2d 505 (3d Cir.1986), *cert. granted,* — U.S. —, 107 S.Ct. 62, 93 L.Ed.2d 21 (1986) (No. 85–2169). It stated that such application "would defeat the reasonable expectations" of plaintiffs who relied on pre-*Goodman* decisions allowing a longer limitations period. 784 F.2d at 514 (applying test from *Chevron Oil Co. v. Hudson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)). The Supreme Court has granted certiorari to consider, *inter alia,* the question of retroactive application of *Wilson* and *Goodman.* — U.S. —, 107 S.Ct. 62, 93 L.Ed.2d 21. In the present case, plaintiff's § 1981 claim concerning the failure to promote would be barred under the pre-*Goodman* 3 year Delaware statute of limitations, 10 *Del.C.* § 8106, because he learned of the promotion on December 20, 1981, and did not file suit until December 28, 1984. The issue of retroactive

### 2. Application to Plaintiff's § 1981 Claims

■ The first step in determining the timeliness of plaintiff's § 1981 claims "requires us to identify precisely the 'unlawful employment practice' of which he complains." *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431. Although plaintiff continues in the employ of Getty, the *Ricks* Court noted that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* The statute of limitations begins to run from the time plaintiff knows or reasonably should know that the unlawful act has occurred. *See Stafford v. Muscogee County Bd. of Ed.*, 688 F.2d 1383, 1389 (11th Cir.1982) (citing cases). The Court's task, then, is to identify the acts of the defendant which give rise to the plaintiff's § 1981 claims to determine if they fall outside the statute of limitations.

The parties are in substantial agreement as to the dates of the particular acts which form the basis of the complaint. Plaintiff's amended complaint identifies three acts by the defendant that discriminated against him on the basis of race. First, defendant's failure to promote plaintiff in December, 1981, to the open GSO Supervisor position, based in part on negative notes in plaintiff's personnel file. Second, defendant's suspension of plaintiff for alleged neglect of his fire watch duties on May 4, 1984. Third, that defendant has failed to follow the terms of the June, 1981 EEOC Settlement Agreement. Each of the acts will be treated seriatim to determine if the two year Delaware statute of limitations will bar a § 1981 claim on the basis of these acts.

### a. Failure to Promote

■ During discovery, plaintiff came upon three notes that reflect negatively on the performance of his duties at the Getty refinery. The notes were written by Mr. Rizzo, plaintiff's GSO Supervisor. Although the timing is unclear, the notes were in plaintiff's personnel file by June, 1981, when the first EEOC Charge of Discrimination was settled. At oral argument, plaintiff's counsel conceded that the notes are not an independent basis for a § 1981 claim, but argues that they do evidence racial discrimination in the decision to promote a white GSO over plaintiff in December, 1981. In his EEOC Charge of Discrimination, plaintiff states, "On or about December 20, 1981, Respondent [Getty] failed to promote me to the position of Millwright Supervisor and chose a less qualified white applicant for the position." Dkt. 45A, at 30. The limitations period begins to run from when plaintiff knew the discriminatory act occurred, here December 20, 1981, and the time to assert his claim expired on December 20, 1983. His failure to file suit in the time allotted under 10 *Del.C.* § 8119 bars a claim for relief predicated on this act under § 1981.

■ There remains the question of whether plaintiff's timely filing of a Charge of Discrimination with the EEOC under Title VII tolls or otherwise alters the conclusion that plaintiff's § 1981 failure to promote claim is barred by the Delaware two year statute of limitations. Although Title VII and § 1981 are closely related, they are not identical. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). The Third Circuit Court of Appeals noted in *Young v. Intern. Telephone & Telegraph* that "nothing in Title VII ... imposes any jurisdictional barrier to a suit brought under § 1981 charging discrimination in private employment." 438 F.2d 757, 763 (3d Cir.1971). Just as filing an untimely charge of discrimination with the EEOC has no effect on a party's right to sue under § 1981, *Bey v. Schneider Sheetmetal*, 603 F.Supp. 450 (W.D.P.A. 1985), so also plaintiff's timely filed Title

application of *Goodman* is not presented in this factual context. Whether plaintiff can save his § 1981 claims based on the failure to promote

and breach of the Settlement Agreement under a continuing violation theory will be discussed *infra.*

VII claims will not save a time barred § 1981 claim.

### b. May 4 Suspension

The May 4, 1984, suspension brings a different result because that act clearly falls within the statute of limitations. Plaintiff amended this basis for relief into his complaint after the motion for partial summary judgment had been filed, and the parties have not yet fully developed the factual background of the event. But for purposes of the defendant's present motion, it must be denied as to this claim under § 1981.

### c. Breach of EEOC Settlement Agreement

Plaintiff's allegation that defendant breached the terms of the EEOC Settlement Agreement is vague, to say the least. The only specific violation of the Agreement noted in the complaint is that "... Defendant knew the Plaintiff could not be promoted under the Defendant's promotional process." Dkt. 38, ¶ 12. If the plaintiff is merely realleging the failure to promote in December, 1981, as the basis for this § 1981 claim, then the same analysis of this incident will apply and the statute of limitations bars the claim.

At oral argument, plaintiff also asserted that defendant has not fulfilled the other terms of the Settlement Agreement by failing to hold management seminars on eliminating discrimination and failing to grant plaintiff the right to receive detailed reasons from the Personnel Department if he were passed over for promotion. Plaintiff did meet with a member of the Personnel Department in June, 1982, to discuss why he was not promoted. *See* Heagy Deposition, Dkt. 41A, at 67–70, 84. Plaintiff alleges, however, that this interview did not meet the requirements of the Settlement Agreement because no "specific reasons" were given for his being passed over. Even assuming the June, 1982 interview breached the Settlement Agreement, the argument is flawed. Plaintiff knew in June, 1982, that the Personnel Department

representative had not given him detailed reasons, and therefore he should have known that the Settlement Agreement had been breached. Under *Ricks*, the limitations period commenced at that point, and plaintiff is now barred from bringing a § 1981 claim on that ground.

Defendant conducted a series of day-long seminars for management personnel, called "Boomerang II," in the fall of 1981. *Id.* at 81–83. Defendant designed the program, called for in the Settlement Agreement, to eliminate racial, ethnic, and religious affronts at its plants. Plaintiff has not brought forth evidence that the seminars did not take place on the identified dates, or that they did not fulfill the requirements of the Settlement Agreement. He asserts, however, that defendant failed to notify the EEOC District Director in Philadelphia of Getty's compliance with the Settlement Agreement. Defendant does not explain how this breach constitutes employment discrimination under § 1981. But even assuming defendant's violation of the Settlement Agreement, that breach took place in 1981, when the Boomerang II program ended, more than two years before plaintiff filed suit. The statute of limitations bars a § 1981 claim on this ground.

### 3. Continuing Violation

Although the Delaware statute of limitations prevents plaintiff from asserting separate § 1981 claims on the failure to promote or the breach of the EEOC Settlement Agreement, he argues they are part of a continuing violation of § 1981 by defendant. As a consequence, plaintiff urges those acts may serve as a basis for a § 1981 claim despite the limitations bar. The Supreme Court recognizes the validity of the continuing violation theory, *Ricks*, 449 U.S. at 257, 101 S.Ct. at 503, *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 557–58, 97 S.Ct. 1885, 1888–89, 52 L.Ed.2d 571 (1977). The theory allows a plaintiff to rely upon acts of discrimination to prove a § 1981 violation that would otherwise be barred by the statute of limitations. *See*

*Berry v. E.I. DuPont de Nemours and Co.,* 625 F.Supp. 1364, 1376 (D.Del.1985).

The principle underlying the continuing violation theory is that the plaintiff "demonstrate a pattern or practice of discrimination that has continued into the present." *Domingo v. New England Fish Co.,* 727 F.2d 1429, 1443 (9th Cir.1984). "But the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists." *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889. The theory does not rest on the fact of plaintiff's continued employment with defendant; nor can it be proved by merely pointing to the effect of a discriminatory act on plaintiff's present employment status. The continuing violation theory does not cover *"isolated instances* of discrimination concluded in the past, even though the *effects* persist into the present." *E.E.O.C. v. Westinghouse Elec. Corp.,* 725 F.2d 211 (3d Cir. 1983) (interpreting *Ricks*) (emphasis in original). To successfully argue a continuing violation theory, therefore, the plaintiff will have to show a present violation, i.e., one within the statute of limitations period, that is reasonably related to previous discriminatory acts that, standing alone, would be barred by the statute of limitations.

In this case, the May 4, 1984 suspension falls within the limitations period, and qualifies as a "present violation." The remaining question is whether the alleged discriminatory act of suspension is related to the failure to promote or the breach of the EEOC Settlement Agreement, both of which fall outside the statute of limitations. Plaintiff has alleged no facts to support the contention that these otherwise time barred events are part of a pattern of discrimination. Moreover, the discriminatory nature of each act is not of itself sufficient to demonstrate the necessary relationship. There is simply no intrinsic connection between these events, other than the involvement of the defendant, to show that they are part of a pattern of discrimination. These acts are best understood as "isolated instances of discrimination," and insuffi-

cient to support a continuing violation theory.

[9] Plaintiff also asserts that the violation of the Settlement Agreement is a continuing violation because the failure to provide specific reasons for not promoting plaintiff and to hold seminars for management continues to the present. There are two deficiencies with plaintiff's argument. First, as discussed above, the breach of the Settlement Agreement occurred, at the latest, in June, 1982. Once the discriminatory practice is identified, the Court must "separate it from the inevitable, but neutral consequences" of that act. *Bronze Shields, Inc. v. N.J. Dept. of Civil Serv.,* 667 F.2d 1074, 1083 (3d Cir.1981). The consequences of defendant's acts are felt by the plaintiff today, but that does not automatically establish a continuing violation. *See id.* at 1084.

Second, plaintiff merely provides an assertion that the breach of the Settlement Agreement supports a continuing violation theory. In the present procedural context the factual inferences are drawn in the light most favorable to plaintiff, but he may not rely on "bare assertions" to contradict the record that an alleged breach of the Settlement Agreement became known to the plaintiff by June, 1982. *Tilden Financial Corp. v. Palo Tire Serv.,* 596 F.2d 604, 607 (3d Cir.1979); *see United States v. Donlon,* 355 F.Supp. 220, 225 (D.Del.1973) ("Suspicion alone without discovery is not enough" to support non-moving party's claim). Plaintiff has failed to show any *present* violation of his rights that would constitute a continuing violation. As a consequence, the continuing violation theory will not resuscitate the failure to promote and breach of the EEOC Settlement Agreement as bases for a § 1981 claim.

## CONCLUSION

Plaintiff's motion to amend will be granted. Defendant's motion for partial summary judgment, that the Delaware statute of limitations bars plaintiff's § 1981 claims, will be granted insofar as those claims relate to the following acts: 1) failure to

promote plaintiff in December, 1981; 2) breach of the EEOC Settlement Agreement. Defendant's motion will be denied regarding the § 1981 claim arising from the May 4, 1984 suspension.[9]

**9.** Defendant has also moved for summary judgment on Count VII of the complaint, where plaintiff alleges a violation of § 1981 on the basis of national origin discrimination. The Supreme Court has granted certiorari to consider the issue of whether national origin discrimination is cognizable under § 1981 in *St. Francis College v. Al-Khazraji*, —— U.S. ——, 107 S.Ct. 62, 93 L.Ed.2d 21 (1986) (No. 85–2169).

The parties did not brief this question, and it was not mentioned at oral argument. Insofar as any national origin discrimination relates to time barred incidents discussed above, the statute of limitations applies equally to this basis. The May 4 suspension is not barred by the limitations statute, and the Court will deny defendant's motion as it relates to this § 1981 claim. The net effect of defendant's motion is marginal because plaintiff has alleged discrimination on the basis of race and color, which are good § 1981 claims. *Cubas v. Rapid American Corp.*, 420 F.Supp. 663, 665 (E.D.Pa.1976).