Patrick CAHILL

v.

Officer Tim CARROLL and
Detective Keith Maust.

Civ. A. No. 86–1918.

United States District Court,
E.D. Pennsylvania.

Sept. 20, 1988.

Adam Thurschwell, Philadelphia, Pa., for plaintiff.

Clayton H. Thomas, Jr., Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

Before the court is the plaintiff's motion for leave to amend the *pro se* complaint and to enlarge time for discovery. The plaintiff wishes to amend the complaint by adding two defendants: Bensalem Township and the Bucks County District Attorney's Office. For the reasons given below, the plaintiff's motion shall be granted.

On December 30, 1985, the plaintiff was arrested in a friend's apartment and charged with possession of a controlled or a counterfeit controlled substance and possession of a controlled or a counterfeit controlled substance with intent to deliver. Defendants Carroll and Maust were the police involved in the arrest. At the time of the arrest, the illegal substances appeared to be counterfeit methamphetamine, lysergic acid diethylamide (LSD), and psilocybin mushroom. On January 31, 1986, a report from the Bucks County Crime Lab, an arm of the Bucks County District Attorney's Office, indicated that no controlled substances were detected in the substances taken from the plaintiff's possession. This report was received by the Bensalem Township Police Department on February 4, 1986.

On February 18, 1986, the criminal complaint was amended to charge the plaintiff with possession and possession with intent to deliver three counterfeit controlled substances. This amended complaint was signed by defendant Carroll. At the preliminary hearing held on February 18, 1986, the defendant was held over for trial. Detective Clee of the Bensalem Township Police Department prosecuted and defendants Maust and Carroll testified. Plaintiff remained incarcerated until May 10, 1986, when all the charges against him were *nol prossed* since the substances did not "qualify as counterfeit (noncontrolled substance)", in the words of the document commemorating the *nol pros*.

On March 31, 1986, while still incarcerated, the plaintiff drafted a *pro se* complaint under 42 U.S.C. § 1983 on a form available for such complaints. He wished to proceed *in forma pauperis*. The original defendants were Officers Carroll and Maust, their families, and the Police Department of Bensalem Township. On June 20, 1986, the complaint was filed in the U.S. District Court for the Eastern District of Pennsylvania. On June 20, 1986, Judge Scirica granted leave to proceed *in forma pauperis,* but dismissed the complaint as to the families of the police officers and as to the Police Department of Bensalem Township. The latter was dismissed as a defendant because the plaintiff had failed to allege an official policy or custom which was at the source of a constitutional violation. On November 18, 1987, the plaintiff retained counsel. On February 20, 1988, the plaintiff moved to amend the complaint by adding as defendants Bensalem Township and the Bucks County District Attorney's Office and to extend time for discovery. The defendants object to this proposed amendment to the complaint, raising arguments based on prejudice, failure to adduce evidence of a "policy" underlying the deprivation of constitutional rights on the part of the township, and the bar of the statute of limitations.

Where a responsive pleading has been filed, a party may amend its own pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision whether to grant leave to amend rests within the sound discretion of the trial court. *Robinson v. Cuyler,* 511 F.Supp. 161 (E.D.Pa.1981). The U.S. Supreme Court has articulated the following standard to be applied in evaluating a party's motion to amend:

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc.—the leave sought should, as the rules require, be 'freely given.' ..."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). With this standard in mind, we shall now consider the plaintiff's motion to amend the complaint.

The defendants basically argue that the motion to amend is prejudicial, futile, and time-barred. We shall address each of these arguments in turn.

The defendants argue that plaintiff's long failure to pursue his action from the time of his release from prison on May 10, 1986 until he retained counsel on or about November 18, 1987, should be taken into account in deciding the instant motion. They also argue that allowing the amendment requested by the plaintiff will seriously retard the trial of the case because of the necessity for new discovery. Both of these factors, they say, must be considered in deciding the issue of prejudice.

As the Third Circuit has said:

"It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795 [802], 28 L.Ed.2d 77 (1971); *Kerrigan's Estate v. Joseph E. Seagram & Sons*, 199 F.2d 694, 696 (3d Cir.1952); Moore § 15.08 [4], at 897; Wright & Miller § 1487, at 428. In evaluating the extent of prejudice courts may inquire into the hardship to the non-moving party if leave to amend is denied. Moore § 15.08 [4], at 902; Wright & Miller § 1487, at 429."

*Cornell & Co., Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823–24 (3d Cir.1978).

■ In assessing whether there will be prejudice, the following factors are frequently taken into consideration: the good faith of the party seeking the amendment; the extent to which there has been an undue delay in proffering the amendment and the degree to which amendment of the pleadings would needlessly delay the final disposition of the case. *L.D. Schreiber Cheese v. Clearfield Cheese*, 495 F.Supp.

313, 315–16 (W.D.Pa.1980). The court must also bear in mind this standard:

"In the context of a 15(a) amendment, prejudice means that the nonmoving party 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely.' *Heyl & Patterson Intern. [v. F.D. Rich Housing]*, 663 F.2d [419] at 426 [3d Cir.1981]. *Cf. Cornell & Co.*, 573 F.2d at 825 (court denied the government's motion to amend as delay was the cause of the defendant's inability to secure the testimony of vital witnesses)."

*Cuffy v. Getty Refining & Marketing Co.*, 648 F.Supp. 802, 806 (D.Del.1986).

In the instant case, we can find no evidence of bad faith on the part of the plaintiff in seeking leave to amend. When he filed the complaint, he was acting *pro se*. The fine points of the liability of local agencies under 42 U.S.C. § 1983 would not likely be within the grasp of the average layman. We are given pause, however, by the length of time which has elapsed between the filing of the original complaint and this motion for leave to amend. The plaintiff did not even retain counsel until November, 1987, some seventeen months after filing his complaint. In *L.D. Schreiber*, 495 F.Supp. 313, the court found that a two and one-half year delay in bringing a motion for leave to amend constituted an undue delay. The court also referred to cases from other jurisdictions in which delays varying from one year to two years and six months had been found to be unduly prejudicial. *Id.* at 316.

■ In the instant case, we believe that the plaintiff has come dangerously close to our limits for tolerance for delay. Twenty months is a long time. There has, however, been no showing that the defendants would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which [they] would have offered had the ... amendment[ ] been timely." *Cuffy*, 648 F.Supp. at 806. We must also, of course, determine whether amend-

ment of the complaint would needlessly delay trial. In his motion, the plaintiff has also requested sixty days from the date of any order granting the motion to amend to conduct discovery against the two new defendants. If this is all the time which will be needed to complete discovery in this case with the addition of two new parties, then we do not believe that the disposition of this case will be greatly delayed. We, therefore, believe that it would be more prejudicial to the plaintiff were leave to amend not granted than it would be prejudicial to the defendants, if it were.

The defendants further argue that amendment should be denied because it would be futile. The defendants say at page 5 of their Memorandum of Law: "It is submitted that upon completion of all discovery, Plaintiff has still failed to establish the existence of any policy or procedure with respect to his arrest, testing done of the substances which were taken, and follow-up action after the test results were received which rise to a deliberate and intentional violation of Plaintiff's civil rights or which would impose any liability on Bensalem Township." (The defendants make no arguments as to futility and the propriety of amendment as it pertains to the District Attorney's Office). The plaintiff counters with a series of citations to pages in the depositions of defendants Maust and Carroll. We have reviewed them and we believe that they may provide a basis for an amended complaint's allegations against these two new defendants. We believe, at this time, that amendment would not be futile, although we have some doubts.

■ Finally, the defendants argue that the statute of limitations bars amendment of the complaint.[1] Under federal law, a civil rights cause of action accrues when the plaintiff knew or had reason to know of the injury that constitutes the basis of his action. *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982). This standard compels us to ask two questions: when could these defendants have injured the plaintiff; and (2) when did the plaintiff know or have reason to know of any injury?

The two new defendants were not aware of the true nature of the substances found on the plaintiff's person until late January—early February, 1986. If the plaintiff suffered any injury at the hands of the defendants, it would have to have been

---

1. The defendants argue this bar as to the addition of the two new defendants and as to what they say are the addition of new pendent state law claims for false arrest, false imprisonment, invasion of privacy, negligence, gross negligence, and punitive damages. We do not agree with the defendants that all of these pendent state tort claims are new. Although the plaintiff filed his original complaint on a standard § 1983 complaint form, he specifically referred, on that form, to "false arrest", "psyical [sic] and mental anguish and duress," and "violation of my rights of protection against unreasonable search and seizure, of my expectation of privicy [sic], my rights to due process in a court of law." *Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Although inartfully drafted, the plaintiff's original complaint would give notice of state tort claims sounding in false arrest, false imprisonment, and invasion of privacy. As for claims of "negligence", "gross negligence", and "punitive damages", for the reasons which we shall discuss further on in this opinion, we believe that their addition is not barred by the statute of limitations. This court also has the power to hear these pendent state claims since the plaintiff's federal claim (under 42 U.S.C. § 1983) possesses substance sufficient to confer subject matter jurisdiction on this court, the federal and state claims are derived from a common nucleus of operative facts (the plaintiff's arrest and incarceration on drug charges), and the plaintiff's claims are such that he would ordinarily be expected to try them in one proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed. 2d 218 (1966). We also believe that it would be in the interest of judicial economy to try the state claims with the federal claim. We have also evaluated the addition of these claims in light of the criteria enunciated in *Foman,* 371 U.S. 178, 83 S.Ct. 227: undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility of amendment. Undue delay, bad faith, and dilatory motive would not apply since the plaintiff, as a layman, would not have heard of "pendent" jurisdiction when he drafted the original complaint. There has been no repeated failure to cure deficiencies. Nor do we find the addition of these claims futile or unduly prejudicial, since they arise out of the incident already known to the defendants.

inflicted in late January—early February, 1986.[2] This is assuming, of course, that the plaintiff can prove to the trier of fact that an unlawful policy was responsible for the plaintiff's continuing incarceration on drug charges.

■ The next issue is: when did the plaintiff know or have reason to know of any injury? There is nothing presently in the record to indicate that the plaintiff received a copy of the lab report at any time. His case was *nol prossed* on May 10, 1986 with the notation that the substances did not "qualify as counterfeit (noncontrolled substance)." This notation should have put the plaintiff on notice that, sometime before May 10, 1986, the two new defendants had known of the chemical analysis of the substances found on his person. As the facts now stand, we believe that the plaintiff, as of May 10, 1986, should have been put on notice to investigate any possible violation of his rights.

■ In an action under 42 U.S.C. § 1983, the relevant statute of limitations[3] is determined by the state statute of limitations applicable to personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 83 L.Ed.2d 254 (1985). In Pennsylvania, 42 Pa.Cons.Stat.Ann. § 5524(2) (Purdon Supp. 1988) permits actions for personal injuries to be brought within two years.

The plaintiff's cause of action accrued on May 10, 1986, when he had reason to suspect that an injury might have been done him. The plaintiff thus had two years—until May 10, 1988—in which to bring a cause of action based upon a violation of his constitutional rights. The plaintiff filed his motion to amend on February 24, 1988. That date was certainly within the two-year period allowed from May 10, 1986. The defendants' argument against allowing amendment of the complaint, based on the bar of the statute of limitations, must, therefore, also fail.

Since we have found that the amendment would not unduly prejudice the defendants, that the plaintiff might perhaps be able to adduce evidence of a "policy" underlying the deprivation of his constitutional rights, and that no statute of limitations bars amendment of the complaint, we shall grant the plaintiff's motion.

An appropriate order follows.

### ORDER

AND NOW, this 20th day of September, 1988, the plaintiff's Motion to Amend the Complaint and to Extend Time for Discovery is hereby GRANTED. The plaintiff is allowed sixty (60) days from the date of this Order to complete discovery against Bensalem Township and the Bucks County District Attorney's Office. The plaintiff is

---

**2.** Unfortunately, neither plaintiff nor defendants have briefed us on the important issue of when the statute of limitations begins to run in the circumstances of the instant case. In paragraph 28 of his amended complaint, however, the plaintiff alleges: "As a direct and proximate result of defendants' actions and policies, plaintiff was detained without just or probable cause on baseless criminal charges *for over three months.*" (Emphasis supplied). We read this paragraph to mean that the plaintiff believes his injury to have been inflicted in late January—early February, 1986, when the District Attorney's Office of Bucks County and the Bensalem Township Police Department, which had received copies of the lab report indicating noncontrolled substances, continued to press criminal charges against him and to keep him incarcerated. The period between late January—early February, 1986, and May 10, 1986, the date of the plaintiff's *nol pros,* is a little over three months.

**3.** With regard to the pendent state claims of "negligence" and "gross negligence", 42 Pa.Cons. Stat.Ann. § 5524 (Purdon Supp.1988) prescribes a two-year statute of limitations. As with the accrual of a federal civil rights claim, the accrual of an action for negligence in Pennsylvania does not begin until the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury. *Schaffer v. Larzelere*, 410 Pa. 402, 406, 189 A.2d 267, 270 (1963). Thus, the accrual date is the same for both federal and state causes of action. As far as the plaintiff's claim for punitive damages is concerned, no statute of limitations will bar the amendment of a complaint " 'by the introduction of an ... added claim of damage arising from the same circumstances [citation omitted]....' " *Schwab v. P.J. Oesterling & Son, Inc.*, 386 Pa. 388, 393, 126 A.2d 418, 421 (1956) (quoting *Wessling v. Latkanich*, 144 Pa.Super. 317, 319, 19 A.2d 553, 554 (1941).

granted an additional 10 days in which to file an amended complaint.